LITTLE ROCK CHAMBER OF COMMERCE *v.* RELIABLE FURNITURE COMPANY.

Opinion delivered April 21, 1919.

1. JUDGMENT—VACATING JUDGMENT BY DEFAULT.—A petition under Kirby's Digest, section 4431, subdivision 7, to vacate a default judgment, when filed after expiration of the term, must not only show lack of service upon defendant and his ignorance of the suit's pendency before judgment is rendered, but also a valid defense to the cause of action.

2. PROCESS—EFFECT OF MISTAKE IN RETURN.—Where the return of service incorrectly states the name of the person intended to be served, the rule that the return is *prima facie* true does not apply, and such return, owing to the mistakes, will not raise a presumption that the service was upon the proper person.

3. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—The findings of fact of a chancellor will not be set aside on appeal unless they are clearly against the preponderance of the evidence.

4. PROCESS—EVIDENCE—SUFFICIENCY.—A chancellor's finding that defendant's manager was not served with process was not against the preponderance of the evidence where the officer making the service did not testify until a year afterward and the return did not name such manager as the person served, and the latter testified positively that he was not served.

5. JUDGMENT—VACATING DEFAULT JUDGMENT.—A defendant will not be estopped by failure to appear at the same term to move to set aside a default judgment for the lack of service where it was ignorant of the suit's pendency before the judgment was rendered, though it had notice before the term expired.

6. CORPORATIONS — SUCCESSORS — ASSUMPTION OF LIABILITY.—Where the assets purchased and liabilities assumed by a corporation from another corporation did not include liability for a lot agreed to be purchased by its predecessor, such corporation did not assume the liability under the contract.

7. CORPORATIONS—REINCORPORATION AND REORGANIZATION—EVIDENCE.—Where an independent corporation purchased all the assets and assumed all the liabilities of another corporation that were listed by it for sale, evidence *held* sufficient to show that the purchasing corporation was not a reorganization or merger of the other corporation, although an officer of the purchasing corporation testified that he and associates became members of the other corporation and later reorganized it.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*John P. Streepey,* for appellant.

1.   Defendant was properly served with summons, so it had notice of the pendency of the suit before the decree was taken.   The evidence shows that it was served on an officer of the appellee.   The return of the sheriff shows this and his return is at least *prima facie* conclusive.   102 Ark. 255.

2.   Appellee showed no valid defense to the suit, the original action.   201 S. W. 122; 116 Ark. 545-561.

*Grover T. Owens,* for appellee.

1.   Appellee was not duly served with summons and had no notice before decree.   Kirby's Digest, § 4431, subdiv. 7; 63 Ark. 323.

2.   The finding of the chancellor upon a question of fact should not be disturbed.   The defense interposed was not a valid one.   The contract was not entered into by the appellee, as Nordlinger was without authority to enter into a contract for the purchase of real estate.   It is specifically alleged in the answer that the by-laws of the corporation did not authorize it and this is undisputed. The question was thus put in issue whether an individual of a corporation had the authority to bind the corporation by an unauthorized contract.   The proof is undisputed that the contract was unauthorized.   An officer of a corporation has no authority other than that specifically designated to him by the by-laws.   He is not empowered to bind it by his signature to contracts unless the authority is conferred by charter or directors and there was no custom to authorize him in such acts.   62 Ark. 23; 14 L. R. A. 356.

3.   The appellee merely purchased the assets of the Adair Company and assumed certain liabilities *listed* in a detailed statement.   This liability is not *listed* and was not assumed.   The chancellor was correct in vacating the judgment.

HUMPHREYS, J.  On the 27th day of February, 1917, appellant instituted suit against appellee, successor to the Adair Furniture Company, in the Pulaski Chancery Court, to enforce the specific performance of a subscription contract of the Adair Furniture Company, of date February 29, 1912, to purchase from appellant $250 worth of real estate.  It was alleged, in substance, that, in order to raise a fund for development purposes, the Adair Furniture Company entered into a contract with appellant to purchase $250 worth of property at its probable value on the 1st day of January, 1917, to be fixed by an appraisement committee, which property might be selected by said furniture company, but, upon failure to select, might be allotted to it; that, failing to select, lot 14, block 10, Chamber of Commerce Addition to the city of Little Rock, Arkansas, was allotted to it under the terms of the contract; that appellee took over the assets and became responsible for the obligations of the Adair Furniture Company, but refused to accept and perform said subscription contract.

Summons was issued against appellee and placed in the hands of the sheriff of Pulaski County for service. The following return was made upon the summons:

"State of Arkansas,

"County of Pulaski.

"I have this 20th day of March, A. D., 1917, duly served the within summons at this county by delivering a copy to H. A. Ortmeyer, manager of the Reliable Furniture Company in this county.

"W. G. Hutton, Sheriff,

"Sol Wormser, D. S."

On the 9th day of March, 1918, a regular day of the October term of said court, a judgment by default for $250 was rendered against appellee and same was declared a lien upon said lot, the lien foreclosed and the lot ordered sold.

On the 15th day of April, 1918, a day of the regular April term of said court, appellee filed a petition, based on the 7th subdivision of section 4431 of Kirby's Digest,

to vacate the judgment rendered on the 9th day of March, 1918. It was alleged in the petition, first, that the judgment was rendered without notice to appellee; second, that, in the fall of 1913, it succeeded, by purchase, the Adair Furniture Company in business, but that it did not assume the liability of the subscription contract, and did not purchase the lot in question as one of the assets of, said furniture company; third, that the contract was signed by S. C. Nordlinger without any authority from the board of directors of said Adair Furniture Company.

The cause was submitted to the court upon the pleadings, exhibits thereto and evidence adduced, upon which the court decreed that the judgment rendered on the 9th day of March, 1918, be vacated, set aside and held for naught, and that the original complaint be dismissed. From the decree, an appeal has been prosecuted to this court, and the cause is here for trial *de novo*.

The evidence responsive to the issues to be determined on appeal is, in substance, as follows: The Adair Furniture Company, a corporation doing a furniture business in Little Rock, Arkansas, on the 29th day of February, 1912, signed a subscription contract binding itself to purchase $250 worth of real estate from appellant at its probable value on the 1st day of January, 1917, to be fixed by an appraisement committee; that the contract provided for the furniture company to select the property, but, failing to do so, the property might be allotted to it; that, under the terms of the contract, lot 14 aforesaid was allotted to it; that the subscription contract was not listed on the books of the Adair Furniture Company as one of its liabilities and that the lot allotted to it was not carried on the books as an asset; that, in the fall of 1913, appellee, a corporation, purchased the assets and assumed the liabilities of the Adair Furniture Company, according to a list of the assets and liabilities made at the time by J. A. Scroggins, which list was certified and approved by a public accountant, after making a complete audit of the affairs of the Adair Furniture Company; that the statement made by Scroggins and said accountant did not

carry or show the lot as an asset or the subscription contract as a liability; that the subscription contract was signed for the Adair Furniture Company by S. C. Nordlinger, its vice president, at the instance of L. A. Adair, its president, but without authority or direction from the board of directors of said corporation; that the subscription contract aforesaid was, on the — day of ——, 1917, presented to appellee for acceptance, but was refused; that appellee also refused to perform said agreement. Sol Wormser, the deputy sheriff who served the summons, testified that he served it upon A. J. Ortmeyer, who was then sitting in the court room, but that, through mistake, he returned it as having been served on H. A. Ortmeyer. He gave his testimony about one year after having served the summons. A. J. Ortmeyer testified that he was a director and manager of the Reliable Furniture Company, appellee herein, at the time the summons was alleged to have been served on him; that the summons was not served on him by the deputy sheriff and that he had no notice whatever of the pendency of the suit until he read in a newspaper that a decree had been entered against appellee; that he had a good defense and would have defended the suit had he known anything about it; that, at the time the summons was alleged to have been served on him, two of his brothers were working for appellee but they had no connection whatever with the company; that their initials were, respectively, H. W. and O. R. In addition to the evidence of A. J. Ortmeyer, recited above, and other evidence given by him, as shown by the original transcript in the case, it was stipulated that he also testified: "Myself and associates became members of the firm of Adair Furniture Company when Mr. Nordlinger left the company. We later reorganized the company as the Reliable Furniture Company, took over all of its assets and had a statement made of all of the debts and liabilities. This claim of the Little Rock Chamber of Commerce did not appear as one of the debts of the Adair Furniture Company and was not on its books."

Section 4431 and the 7th subdivision thereof, under which the petition to vacate the judgment was filed, is as follows:

"The court in which a judgment or final order has been rendered or made shall have power, after the expiration of the term, to vacate or modify such judgment or order:

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"*Seventh.* For unavoidable casualty or misfortune preventing the party from appearing or defending."

The petition to vacate the judgment having been filed after the expiration of the term at which it was rendered, it was necessary for appellee not only to show that summons was not served upon him and that he had no knowledge of the pendency of the suit before the rendition thereof, but that he had a valid defense to the cause of action. *Holman* v. *Lowrance,* 102 Ark. 252.

It is contended by appellant that the court erred in finding that appellee was not served with summons. Upon conflicting evidence, the chancellor found that the summons was not served upon A. J. Ortmeyer, manager of appellee. It is true, as suggested by learned counsel for appellant, that an officer's return of summons is regarded as *prima facie* true and that the burden of proof rests upon the one attacking the service. In the instant case, however, it is conceded that the return of the officer was incorrect in that it stated that the service was had upon H. A. Ortmeyer, when, according to the evidence of the deputy sheriff, it should have stated that it was served upon A. J. Ortmeyer. On account of the admitted mistake in the return of service, the rule, that it is *prima facie* true, can be of no assistance in the case at bar. On the contrary, the very fact that it contains a mistake has the effect of weakening the testimony of the deputy sheriff rather than strengthening it. The rule is well established in this State that "The findings of the chancellor will not be set aside by this court unless they are clearly against the preponderance of the evidence." In elucidating the rule, this court said in the case of *Leach* v. *Smith,* 130

Ark. 465, that "This simply means that on a trial anew of the issues of fact in a chancery cause on the record as presented to this court on appeal, unless it is clear to our minds, that is, unless we are fully convinced as to which of the parties litigant is entitled to a decision, we accept and adopt the findings of the chancellor as our own and treat them as conclusive." We are unable to say in the case at bar that the findings of the chancellor are clearly against the weight of the evidence. The return, owing to the mistake contained in it, in no way supports the evidence of the officer. There were two brothers of A. J. Ortmeyer working at appellee's place of business, and the chancellor may well have concluded that, since the officer made a mistake in the initials of A. J. Ortmeyer in making his return, he may have been mistaken as to the identity of the person. The officer did not give his testimony until nearly a year after the service was made. Appellee testified positively that he was not served with process and that, had he been served, he would have defended. The evidence is so evenly poised that we are unable to say where the preponderance lies. The chancellor has found the preponderance with appellee. Under the well established rule in that situation of the evidence, we must be guided by the finding of the chancellor. But it is contended that appellee is precluded from attacking the service, because it had notice that the judgment was rendered against it and did not appear at the same term of court and move to vacate the judgment. Appellee had no notice of the pendency of the suit before the decree was rendered against it. It is only in the event that defendants have notice of the pendency of suits against them before the rendition of judgments or decrees against them that they are estopped from assailing the decrees thus rendered without service. If they have no notice of the pendency of the suit until after the rendition of the judgment or decree, they can appear either at the same term or after adjournment and move to vacate the judgment or decree, provided they bring themselves within the requirements of the statute. Appellee did so in the instant case.

It is also insisted that the court erred in holding that appellee was not obligated upon the subscription contract signed for the Adair Furniture Company by its vice-president, S. C. Nordlinger. The only theories upon which the Reliable Furniture Company, the appellee herein, can be held responsible on the subscription contract entered into by the Adair Furniture Company, its predecessor in business, are, first, that the Reliable Furniture Company assumed the liability at the time it purchased the assets of the Adair Furniture Company; and, second, that the Reliable Furniture Company was a mere reorganization or continuation of the first corporation.

(1) The undisputed evidence in the record is to the effect that appellee, at the time it purchased the assets of the Adair Furniture Company, in the fall of 1913, did not assume the liability under the subscription contract. The lot in question was not carried on the books as an asset nor the contract on the books as a liability. The only assets purchased and liabilities assumed were those contained in the list prepared by J. C. Scroggins and found to exist by the expert accountant. The lot was not included in the list as an asset nor the subscription contract in the list as a liability. So, there was no assumption of the contract by appellee.

(2) The subscription contract was signed in 1912, at the time S. C. Nordlinger was connected with the corporation. Thereafter, Nordlinger left the company and A. J. Ortmeyer and his associates became interested therein. In the fall of 1913, A. J. Ortmeyer and his associates organized the Reliable Furniture Company and purchased the assets and assumed the liabilities listed at that time by J. C. Scroggins and certified and approved by a public accountant. It is apparent from a careful reading of the evidence of both J. C. Scroggins and A. J. Ortmeyer that appellee was organized as an independent corporation and purchased all the assets and liabilities thus listed from the Adair Furniture Company in the fall of 1913. We do not think it can be reasonably inferred from the stipulation amending the record, when

read in connection with the other evidence, that the Reliable Furniture Company was reorganized as a mere continuation of the Adair Furniture Company. On the contrary, it appears that the Reliable Furniture Company purchased the listed assets from the Adair Furniture Company and assumed its listed liabilities. The very fact that all the assets and liabilities were listed for purposes of sale indicate that the two corporations were dealing with each other as independent entities. We do not think the facts in the record, as amended, justify the inference that there was a mere merger. It is true, in the stipulation amending the record, A. J. Ortmeyer testified that "Myself and associates became members of the firm of Adair Furniture Company when Mr. Nordlinger left the company. We later reorganized the company as the Reliable Furniture Company, took over all of its assets and had a settlement made of all the debts and liabilities." The use of the word "reorganized" in the connection used and in the light of the other evidence, meant that the Reliable Furniture Company, as an independent corporation, purchased certain assets from and assumed certain liabilities of the Adair Furniture Company, and did not mean that the Reliable Furniture Company absorbed the Adair Furniture Company.

Under this view of the evidence, it is unnecessary to discuss whether or not the Adair Furniture Company was bound by its obligation on the subscription contract signed by its officers without authority of the directors.

No error appearing, the decree is affirmed.