**CORBETT v. BURNET, Commissioner of Internal Revenue.**

No. 5122.

Court of Appeals of District of Columbia.
Argued April 10, 1931.
Decided May 4, 1931.

John E. Hughes and William Cogger, both of Washington, D. C., for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Hayner N. Larson, and C. M. Charest, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is an appeal from a decision of the Board of Tax Appeals approving in part a deficiency tax imposed by the Commissioner on appellant for the year 1921.

Appellant, who resides in Florida, filed his income tax return for the year 1921 in which he showed a profit of $54,349.40 derived from the sale of 200 shares of the stock of Melville-Corbett Company. In 1926, the Commissioner increased the return in the sum of $13,859.10 because he found that appellant also owned a 34 per cent. interest in a partnership which in turn owned 150 shares of the same stock sold at the same price and at the same time as appellant's individual stock. The additional assessment was based on the identical amount of profit per share shown by petitioner in his income tax return to have resulted from the sale. Appellant first insisted that, if he had to pay this additional tax, he was entitled to set off against it certain losses which he claimed he had sustained in the same year and for which no allowance had been made, but, before the hearing by the Board, he amended his petition so as to claim the benefits of sections 212 and 1208 of the Revenue Act of 1926, 26 USCA §§ 953, 953a (the installment sales section), and, at the hearing on his petition, the Board found that in 1921 appellant, as the owner, directly or indirectly, of 251 shares of stock of the Melville-Corbett Company, together with the holders of 249 shares, making 500 shares of a total issue of 1,000 shares, had agreed to sell and had sold the same to the Miner-Edgar Company, the owner of the other 500 shares, and that the consideration for the sale was $10,000 in cash, three notes of the Miner Company, indorsed by the Melville Company for $5,000 each, payable in 2, 4, and 6 months, respectively, ten notes of the Miner Company, indorsed by the Melville Company, for $8,300 each, payable, as to one, May 1, 1922, and thereafter one on each subsequent six months, and a bond of the Melville-Corbett Company for $80,000, payable as to $8,000 thereof on May 1, 1927, and $8,000 each 6 months thereafter until fully paid, and secured by mortgage on the plant and property of that company. The Board found that this particular transaction was a sale, and that the Commissioner had correctly ascertained the gain arising therefrom under section 202(a) of the Revenue Act of 1921, 42 Stat. 227, 229. The Board, however, did not pass upon the question whether the sale was an installment sale, and therefore whether appellant was entitled to the benefits of section 212(d) of the Revenue Act of 1926, 26 USCA § 953(d).

After the decision was announced, appellant filed a petition asking the Board to reconsider and to hold that the transaction in question was not a sale, but an exchange of property under section 202 (c) (1) of the Revenue Act of 1921 (42 Stat. 230). The Board declined to amend, and appellant filed his petition for appeal to this court.

■ The evidence certified up is more confusing than enlightening, but enough appears, we think, to justify us in holding that there was substantial evidence from which the Board could reasonably find that the Commissioner was correct in ruling that the transaction was a sale and the profit therefrom taxable under 202 (a) Act of 1921, and also that the notes and the bond had, as of the time of their delivery, a present market value equal to their face value. The total purchase price of the 500 shares of stock was $188,000. The purchaser was the owner of the remaining 500 shares. It paid $10,000 in cash, $15,000 additional within six months, and, as nearly as we can determine from the evidence, also paid the ten notes aggregating $83,000 maturing each six months after the sale. Some doubt is thrown on this last-men-

tioned payment in the opinion of the Board, though in the evidence of appellant he seems to us clearly to have testified that all the notes were paid, and that the interest on the $80,000 bond was likewise paid up to 1927, and only the principal sum of the bond remains due, and the pleadings, though far from clear on this subject, would indicate this also; so that, assuming the transaction to have been a "sale" rather than an "exchange," all that remains is to determine whether there is sufficient evidence to sustain the Commissioner's conclusion that the notes and bond had then a fair market value equal to their face value. When the bond was delivered, it was secured by a mortgage on a going company worth presumably, if the price the purchaser was willing to pay be taken as a criterion, approximately four times the amount of the bond, and it was agreed to be additionally secured, and presumably was secured, by an indemnity bond executed by the purchaser in double the amount of the debt. On the other hand, the only evidence as to lack of value on the part of the bond is that of appellant himself, and this is thoroughly unsatisfactory. When he was asked upon what he predicated his statement that the bond had little value, he said: "The elements which entered into my statement saying that I did not think the bond or mortgage had any market value when I had it were the credit of the people who took it over was not good, the Miner-Edgar people. The Melville-Corbett Company had a lot of assets and goods making and everything that that stock represented. They were a going concern with a lot of assets." It is true he also says he tried to market the bond, but he does not say on what basis he offered it, or what terms he was able to get. In these circumstances we are obliged to reach the same conclusion reached by the Board. See Burnet v. Houston, 51 S. Ct. 413, 75 L. Ed. ——, decided by the Supreme Court April 13, 1931.

But appellant insists that, even though we reach this conclusion, we should reverse the Board's decision because of its failure to treat the transaction as an exchange rather than a sale. It would perhaps be sufficient to say as to this that no such question was presented to the Board, except as it was presented after the decision was rendered, but we do not put our rejection on this ground, but rather on the ground that all the evidence of the transaction was consistent with a sale rather than an exchange within the purview of the revenue statutes. The parties themselves regarded it as a sale, for in their written contract they speak of the buyer as wishing to acquire by "purchase," and the "sellers" as agreeing to deliver to the "buyer" at a certain time, etc., and appellant himself, in his return, recognized that a sale was intended and a profit realized, and the transaction itself, as we think, is only consistent with a sale as that word is ordinarily understood, for there was a present delivery of property for a fixed price in money and its equivalent. The fact that the buyer pays cash in part and promises the balance in the future does not change the legal import of the transaction, or bring it within the terms of section 202 (e). The purpose of the parties unquestionably was to sell the stock for a definite sum of money, of which part was paid in cash and part in promissory notes and a bond secured by a mortgage, but all were promises to pay at a definite date, and the transaction as a whole was only consistent, we think, with the idea of a sale.

■ As this disposes of the only questions raised by assignments of error in this court, we might perhaps stop here, but counsel in the argument and in the brief urge the applicability of section 212 (b) of the Revenue Act of 1926 (26 USCA § 953 (b), commonly known as the installment sales provision. Hence, unless it be thought we had overlooked the argument advanced in support of this contention, we notice it to call attention to the fact that, though this point was raised in the amended petition filed with the Board in 1927, that is to say, more than five years after the tax accrued, it was obviously not urged on the Board, for not only was it not decided, but in the motion for an amended decision, filed after the original decision, no mention or complaint of the omission was made, and, in the assignments on the appeal to this court, all reference to this issue is again omitted. Since we must necessarily infer, therefore, that the question, though raised on the amended petition before the Board, was not pressed but abandoned, and was not revived in the appeal to this court, it is too late now to consider it. The rules of this court require that assignments of error intended to be relied upon be specified, and this is a salutary rule which should be adhered to. But, even if we were disposed to disregard it in the present case, we should be wholly unable to reach a conclusion, since, as we have shown, there is nothing in the findings of fact or in the opinion of the Board which sheds any light upon the subject, and, in the evidence found in the record, there is nothing from which we can determine what

proportion of the notes appellant received, and when they were paid, whether he is the sole owner of the mortgage bond, and, if so, why, or whether, if he was once the sole owner of the bond, he sold it, as his testimony before the Board shows, though his subsequent affidavit denies it, whether limitation on his right to claim the benefit of the section has run, or any other fact material to a fair discussion of this subject.

In these circumstances, we think it our duty to affirm the decision of the Board. Whether appellant may apply to the Board for a rehearing and a decision on his petition to apply the installment statute depends upon facts of which we are not advised, and therefore as to which we express no opinion.

Affirmed.