## PINELLAS ICE & COLD STORAGE CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 6347.

Circuit Court of Appeals, Fifth Circuit.

March 29, 1932.

Albert L. Hopkins, of Chicago, Ill., and E. C. Lake, of Washington, D. C., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and F. R. Shearer, Sp. Atty., Bureau of

Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

FOSTER, Circuit Judge.

In December, 1926, petitioner, the Pinellas Ice & Cold Storage Company, a Florida corporation, disposed of substantially all its property to another corporation. Treating the transaction as a reorganization of the company, in making returns for 1926, petitioner assumed that, under the provisions of section 203, Revenue Act of 1926 (26 USCA § 934), no taxable profit had been derived from the transfer. The Commissioner of Internal Revenue disagreed with this and determined that a taxable profit of $552,144.12 had resulted from a sale of assets. A deficiency of $74,673.50 was assessed. On appeal, the Board of Tax Appeals held that the transaction was a sale and affirmed the Commissioner. 21 B. T. A. 425. The findings of facts by the board are not excepted to. We may refer to them for the facts in detail.

It appears that petitioner and another corporation, the Citizens' Ice & Cold Storage Company, were engaged in the business of manufacturing and selling ice, in the vicinity of St. Petersburg, Fla. They had substantially the same stockholders and the same general manager, Leon D. Lewis. In February, 1926, negotiations were begun through Lewis with the National Public Service Corporation, a holding company for what was called the Fitkin interests, for the disposition of the business and property of both companies. These negotiations culminated in separate written agreements, executed on November 4, 1926, for the sale of the properties to a corporation to be created.

The new company, called the Florida West Coast Ice Company, was formed. On December 17, 1926, substantially all the assets of petitioner were deeded to the new company for $1,400,000, payable $400,000 cash and the balance represented by four notes for the respective amounts of $500,000, $250,000, $150,000, and $100,000, payable serially from January 31, to April 1, 1927. Bonds of the new company were deposited as collateral security for these notes. A similar transaction was had with the Citizens' Ice Company. All of the cash payment went to pay creditors. The notes were paid on or before their due dates, except the note for $100,000, which was not paid until No-

vember, 1927. As the notes were paid, in accordance with resolutions for the dissolution of petitioner, the proceeds were distributed to its stockholders as liquidating dividends, which were indorsed on the stock certificates that had been previously turned over to petitioner. Only a small amount of cash was retained for contingent expenses. A holding company was organized, and the assets not disposed of, about 1 per cent., were transferred to it as trustee. It is not shown that the stockholders of either petitioner or the Citizens' Company had any interest in the Florida West Coast Ice Company before or after the transfer.

Relying on the provisions of section 203, paragraphs (b) (3), (e) (1) and (h) (1) (A) of the Revenue Act of 1926 (26 USCA § 934 (b) (3), (e) (1), (h) (1) (A), it is contended by petitioner: That there was a reorganization to which petitioner and the West Coast Company were parties; that the notes were securities of the new company; that there was an exchange of the property of petitioner for cash and securities; that this was distributed in pursuance of a plan of reorganization; and that therefore no gain to the corporation should be recognized.

Apparently there are no decisions in point, and it would be useless to review the cases cited by either side.

Section 203 appeared first in the 1924 Revenue Act (26 USCA § 934). As it is readily available, we need not burden the opinion by setting it out in full. Prior thereto the profit resulting from all exchanges of property was taxable. It is evident that in enacting section 203 Congress intended to exempt from consideration for either profit or loss transfers of property which were really exchanges of capital assets, and, to a certain extent, to brush aside technicalities in so construing them. It is equally clear that there was no intention to exempt profit arising from an outright sale of property, or an exchange of property, between corporations where there was in fact no reorganization.

There is no doubt that the written agreement of November 4, 1926, for the disposition of petitioner's property to a new corporation, contemplated an outright sale and not an exchange or a reorganization. The conveyance of the property on December 17, 1926, was in form a sale and not an exchange. This is not seriously disputed by petitioner, but it is contended that under the definition of paragraph (h) (1) (A) the mere acquisition by the Florida West Coast

Ice Company of substantially all the property of petitioner was a reorganization.

So far as material, section 203 (h), is as follows:

"(h) As used in this section and sections 201 and 204—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred. * * * "

As applied to corporations, the terms "merger" and "consolidation" have well known legal meanings. While the result is practically the same in either event, there is this difference. In a merger one corporation absorbs the other and remains in existence while the other is dissolved. In a consolidation a new corporation is created and the consolidating corporations are extinguished. In either event, the resulting corporation acquires all the property, rights, and franchises of the dissolved corporations, and their stockholders become its stockholders. Royal Palm Soap Co. v. Seaboard Air Line Ry. Co. (C. C. A.) 296 F. 448; Bouvier's Law Dictionary (3d Ed.) p. 2202, verbo "merger."

It must be assumed that in adopting paragraph (h) Congress intended to use the words "merger" and "consolidation" in their ordinary and accepted meanings. Giving the matter in parenthesis the most liberal construction, it is only when there is an acquisition of substantially all the property of another corporation in connection with a merger or consolidation that a reorganization takes place. Clause (B) of the paragraph removes any doubt as to the intention of Congress on this point.

It follows that there was no reorganization, and consequently no party to a reorganization, in connection with the disposition of petitioner's property. It is unnecessary to pass upon petitioner's other contentions.

The record presents no reversible error. The petition is denied.