## CORTLAND SPECIALTY CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 335.

Circuit Court of Appeals, Second Circuit.

July 29, 1932.

M. Manning Marcus, of Washington, D. C., for petitioners.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Francis H. Horan, Sp. Assts. to Atty. Gen., and C. M. Charest and H. B. Hunt, Gen. Counsel, Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question raised by this appeal is whether the transfer by Cortland Specialty Company to Deyo Oil Company, Inc., hereinafter described was a reorganization within the meaning of section 203 (h) (1) of the Revenue Act of 1926, 26 USCA § 934 (h) (1), which relieved the Cortland Company from paying an income tax upon any gain that might result therefrom, or whether the transfer was a mere sale which subjected the transferor to a tax on any profit which it realized. The Cortland Company made its return upon the theory that the transfer was in effect a reorganization. The Commission-

er held that it was nothing but a sale, and assessed a tax deficiency against it for the year 1925 in the sum of $13,412.82 because of a profit of $101,175.58 over the depreciated cost of the property transferred. A similar tax deficiency was assessed against Mr. and Mrs. Sargent as transferees of the assets of the Cortland Company. Their liability is undisputed in case that of the company should stand. The Board of Tax Appeals affirmed the action of the Commissioner.

During the year 1925 the Cortland Company was engaged in the business of buying and selling petroleum products. Herbert R. Sargent and his wife, Bertha C. Sargent, were the sole owners of its stock. Mr. Sargent was the president, treasurer and general manager, and Mrs. Sargent was the secretary. The Deyo Oil Company was a corporation engaged in the same business, and each of the companies were New York corporations. On September 26, 1925, agreements were entered into between the Cortland Company and Deyo Company, and by Sargent and the latter, whereby the greater part of the assets of the Cortland Company were turned over to the Deyo Company, the Cortland Company agreed to discontinue business after October 1, 1925, and Sargent became the general manager of the business of the Deyo Company in the territory previously served by the Cortland Company. The assets to be transferred under the contract were:

(1) Real property, leases, and physical equipment of Cortland.

(2) Merchantable petroleum products of Cortland.

The consideration for the transfer, according to the contract, was:

Payments by Deyo for real property, leases, and physical equipment of business made under articles first and third of the contract of transfer:

| | | |
|---|---|---|
| Cash | | $ 53,070.00 |
| Promissory notes of Deyo, each dated October 1, 1925, and payable: | | |
| December 1, 1925 | $35,500.00 | |
| January 1, 1926 | 21,300.00 | |
| March 1, 1926 | 26,625.00 | |
| June 1, 1926 | 26,625.00 | |
| September 1, 1926 | 26,625.00 | |
| December 1, 1926 | 23,075.00 | |
| Total notes | | 159,750.00 |
| | | $212,820.00 |
| Payment by Deyo, on October 9, 1925, for merchantable petroleum products purchased from Cortland under article fourth of the contract | | 23,803.82 |
| Total receipts by Cortland on account of transfer | | $236,623.82 |

The $53,070 of cash paid by Deyo to Cortland, and the $159,750, in notes of Deyo, were distributed by Cortland to Mr. and Mrs. Sargent, its sole stockholders, shortly after the transfer occurred. They collected the notes as they fell due, the note for $21,300 payable December 1, 1925, on that date, and the remaining notes when they matured in 1926.

The Cortland Company proceeded to liquidate its accounts receivable and trade notes and other property not included in the transfer to Deyo, to pay its debts, and in general to prepare for dissolution which occurred June 30, 1926.

The following assets of Cortland were not transferable to Deyo under the contract with the latter:

| | |
|---|---|
| Accounts and trade notes receivable amounting to about | $60,000.00 |
| Stock of garage company valued at | 4,000.00 |
| Estimated cash on hand, not included in transfer | 14,000.00 |
| Total assets not transferred under contract | $78,000.00 |
| Amount owing by Cortland to its creditors was | 56,000.00 |
| Net amount of assets of Cortland not covered by contract with Deyo | $22,000.00 |

From the foregoing, it is probable that, in view of an immediate proposed distribution by Cortland to its stockholders and of the possibility of poor returns from the $60,000 of accounts, Cortland omitted from the contract the $78,000 of assets in order safely to pay its own creditors, and relied on the assets which it retained and the amount which its petroleum products sold to Deyo would later yield to care for its existing obligations and for further expenses connected with the transfer and the dissolution proceedings.

| | |
|---|---|
| The net result of its transactions was to transfer to Deyo assets amounting to | $236,623.82 |
| and to withhold net assets from the transfer of | 22,000.00 |
| making its total assets at the date of transfer equal | $258,623.82 |

The foregoing tabulation shows that about 91½ per cent. of Cortland's assets were transferred to Deyo and only about 8½ per cent. were retained. There can be no doubt that by the transfer Deyo acquired substantially all the properties of Cortland, and so the Board of Tax Appeals found.

Whether the above transfer of real property, leases, and equipment was a sale resulting in a gain on which Cortland was taxable, or whether it represented an exchange in pursuance of a "plan of reorganization" on which no gain should be recognized, depends on the effect to be given to the provisions of

section 203 of the Revenue Act of 1926 (26 USCA § 934).

It may be said at the outset that the contract of Cortland with Deyo and the corporate resolution authorizing it to be made treat the transfer to the latter as a sale. The instrument begins by reciting that Cortland "has determined * * * to sell and dispose of all its physical and tangible assets," and that Deyo "has determined to purchase said assets." It goes on to say that Cortland "agrees to sell, transfer and convey * * * all and singular its real property, interests in real property, leases of real property * * * and equipment * * *" and later to say that it "shall sell * * * all of the merchantable gasoline, kerosene, oils and other petroleum products," and that Deyo "agrees to pay" the "purchase price of $213,-000.00" for the "real property * * * and equipment" and a further "purchase price" to be determined by "an inventory taken at prevailing cost prices" for the "petroleum products." Nothing is said about the acquisition of any vested interest by Cortland or its stockholders in the business or assets of Deyo, but, on the contrary, it is provided that their interest shall be completely severed for, under article fifth of the contract, Cortland is "not to engage in the business of buying, selling or dealing in gasoline, kerosene or other petroleum products from and after October 1st, 1925," and is to receive nothing but cash and short time promissory notes as the consideration for the business and property sold. The transaction certainly bore all the characteristics of a simple sale.

But it is argued that under subdivisions (e) and (e) (1) of section 203 of the Revenue Act of 1926, 26 USCA § 934 (e) and (e) (1) "no gain or loss shall be recognized if a corporation a party to a reorganization" distributes "stock or securities" and "money" "in pursuance of the plan of reorganization," and that under subdivision (h) (1) (A) of the section of the act, 26 USCA § 934 (h) (1) (A), the term "reorganization" is defined broadly enough to exempt Cortland from a profit tax on its transfer. In subdivision (h) (1) (A) a reorganization is defined as *"a merger or consolidation,"* and the subdivision goes on to say that "merger or consolidation" *include* "the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation." If the last clause means that any transfer of "substantially all the properties" of one corporation to another corporation is a reorganization, the position of Cortland is strong; but we do not regard such an interpretation as warranted.

Reorganization, merger, and consolidation are words indicating corporate readjustments of existing interests. They all differ fundamentally from a sale where the vendor corporation parts with its interest for cash and receives nothing more. Reorganization in the most ordinary sense suggests "the formation of a new corporation that is in financial difficulties, for the purpose of purchasing the company's works and other property, after the foreclosure of a mortgage or judicial sale." Morawetz Corp. § 812; Symmes v. Union Trust Co. (C. C.) 60 F. 830. While the term includes financial readjustments in ways other than by judicial sale, it does not properly embrace mere purchases by one company of the assets of another. Little Rock Chamber of Commerce v. Reliable Furniture Co., 138 Ark. 403, 211 S. W. 371. Reorganization is defined in subdivision (h) (1) (A) as including "a merger or consolidation." A merger ordinarily is an absorption by one corporation of the properties and franchises of another whose stock it has acquired. The merged corporation ceases to exist, and the merging corporation alone survives. A consolidation involves a dissolution of the companies consolidating and a transfer of corporate assets and franchises to a new company. In each case interests of the stockholders and creditors of any company which disappears remain and are retained against the surviving or newly created company. Atlantic & G. Railroad Company v. Georgia, 98 U. S. at page 362, 25 L. Ed. 185; Matter of Bergdorf, 206 N. Y. 309, 99 N. E. 714; Pinellas Ice & Cold Storage Co. v. Commissioner (C. C. A.) 57 F.(2d) 188; Royal Palm Soap Co. v. Seaboard Air Line Ry. Co. (C. C. A.) 296 F. 448; Lee v. Atlantic Coast Line (C. C.) 150 F. 775. Undoubtedly such statutes vary in the different states particularly in respect to how far the constituent companies may be deemed to survive the creation of the new or modified corporate structure, but we believe that the general purpose of them all has been to continue the interests of those owning enterprises, which have been merged or consolidated, in another corporate form. A sale of the assets of one corporation to another for cash without the retention of any interest by the seller in the purchaser is quite outside the objects of merger and consolidation statutes.

Section 203 of the Revenue Act of 1926 must be interpreted in this setting. Its purpose was to relieve those interested in corporations from profits taxes in cases where there was only a change in the corporate form in which business was conducted without an actual realization of any gain from an exchange of properties. When describing the kind of change in corporate structure that permits exemption from these taxes, section 203 does not disregard the necessity of continuity of interests' under modified corporate forms. Such is the purpose of the word "reorganization" in section 203 (b) (3) of the act, 26 USCA § 934 (b) (3), where a corporation exchanges its property "solely for stock or securities." Such also is the nature of the "merger or consolidation" described in subdivision (h) (1) (A) where a corporation acquires a majority of the stock of another, and such is the nature of the "reorganization" described in subdivision (h) (1) (B) of section 203, 26 USCA § 934 (h) (1) (B), where a corporation transfers assets to another corporation, and the transferor, or its stockholders, immediately thereafter are in control of the transferee. The words "A recapitalization," in subdivision (h) (1) (C) of section 203, 26 USCA § 934 (h) (1) (C), and "A mere change in \* \* \* form \* \* \* of organization, however effected," in subdivision (h) (1) (D) of section 203, 26 USCA § 934 (h) (1) (D), involve the same idea.

■ When subdivision (h) (1) (A) included in its definition of "merger or consolidation" the "acquisition by one corporation of \* \* \* substantially all the properties of another," it did this so that the receipt of property by the corporation surviving the merger might serve to effect a reorganization as does an acquisition of stock. Each transaction presupposed a continuance of interest on the part of the transferor in the properties transferred. Such a limitation inheres in the conventional meaning of "merger and consolidation," and is implicit in almost every line of section 203 which we have quoted. In Pinellas Ice & Cold Storage Co. v. Commissioner, 57 F.(2d) 188, the Court of Appeals of the Fifth Circuit decided that a transaction almost exactly like the present was not a "merger or consolidation," but a mere sale carrying no exemption. Judge Groner's opinion in Corbett v. Burnet, 60 App. D. C. 202, 50 F.(2d) 492, is in accord. In defining "reorganization," section 203 of the Revenue Act gives the widest room for all kinds of changes in corporate structure, but does not abandon the primary requisite that there must be some continuity of interest on the part of the transferor corporation or its stockholders in order to secure exemption. Reorganization presupposes continuance of business under modified corporate forms.

■ Furthermore the Cortland Company cannot come within the exception to the general rule that gains realized from exchanges of property represent taxable income unless section 203 (e) and section 203 (e) (1) apply. Under those clauses, even if the transfer to Deyo was an exchange in pursuance of a "plan of reorganization," the property received by Cortland had to include *some* "stock or securities" (section 203 (e), or the exemption could not be had. As no stock was issued against the transfer, the conditions for an exemption were not fulfilled unless the notes, all payable within fourteen months of the date of the transfer, and all unsecured, can be considered "securities" under section 203 (e). Inasmuch as a transfer made entirely for cash would not be enough, it cannot be supposed that anything so near to cash as these notes payable in so short a time and doubtless readily marketable would meet the legislative requirements.

The very reason that section 203 (e) requires that some of the property received in exchange should be *"stock or securities"* is to deprive a mere sale for cash of the benefits of an exemption and to require an amalgamation of the existing interests. There can be no justice or propriety in taxing one corporation who transfers its properties for cash and in relieving another that takes part of its pay in short time notes. The situation might be different had the "securities," though not in stock, created such obligations as to give creditors or others some assured participation in the properties of the transferee corporation. The word "securities" was used so as not to defeat the exemption in cases where the interest of the transferor was carried over to the new corporation in some form.

■ It seems unnecessary to say that the contract whereby Sargent went into the employment of Deyo for one year as manager in the business territory formerly occupied by Cortland did not place Cortland or its stockholders in control of Deyo in such a way as to effect a reorganization within the meaning of section 203 (h) (1) (B).

The orders of the Board of Tax Appeals are affirmed.