### BEECH v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5712.

Circuit Court of Appeals, Third Circuit.

Jan. 30, 1936.

BUFFINGTON, Circuit Judge, dissenting.

———◆———

Thomas Watson, of Pittsburgh, Pa., for petitioner.

Harry Marselli, of Washington, D. C., Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., for respondent.

Before BUFFINGTON and THOMPSON, Circuit Judges, and KIRKPATRICK, District Judge.

KIRKPATRICK, District Judge.

The question presented by this petition for review of the decision of the Board of Tax Appeals is whether gain arising from an exchange of stock was taxable.

The exemption claimed is under section 112 (b) (3), Revenue Act 1928 (26 U.S.C.A. § 112 and note), which is as follows: "(3) Stock for stock on reorganization. No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

It will be noted that the exemption depends upon two conditions: First, the corporations whose stock is exchanged must be parties to a reorganization; and, second, the exchange must be in pursuance of the plan of reorganization.

It might be thought that a situation could scarcely arise in which one of these conditions would be present without the other; yet this appears to be such a case. There is no real controversy about the fact that a plan of reorganization was formed, that the taxpayer parted with his stock in pursuance of the plan, and that, so far as he knew, the stock which he got in exchange was also delivered in pursuance of the plan. But the Board of Tax Appeals has found as a fact that, unknown to the taxpayer, the plan under which he thought he was exchanging his stock was never carried out, but that the stock which he received was owned by a third person who was acting independently of and not as an agent for either corporation involved. Consequently no "reorganization," within the meaning of that term as used in the act, took place and neither of the corporations whose stock was exchanged was a party to a reorganization.

The facts as found by the Board were as follows: The corporations involved were two banking institutions which may be called the "Trust Company" and the "Birmingham Bank." The Trust Company desired to take over and absorb the Birmingham Bank by acquiring its stock and liquidating its business. Negotiations resulted in a written proposal by the holders of 770 shares of stock of the Birmingham Bank by which they offered to exchange their stock at the rate of one share for three and one-third shares of the Trust Company, with the proviso that the Trust Company stock so acquired would be purchased for cash at a figure named within fifteen days of the acceptance of the offer. It was provided that the offer should remain open for acceptance for a period of thirty days.

If this arrangement had been carried out, it may be assumed that it would have constituted a reorganization as that term is defined in Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428, and Cortland Specialty Company v. Commissioner (C.C.A.) 60 F. (2d) 937.

But it was not carried out and, instead, entirely new machinery of transfer was substituted without the knowledge of the stock-

holders of the Birmingham Bank. After the offer had been submitted to the Trust Company, its officials came to the conclusion that if it were accepted there would be a violation of the rules of the Federal Reserve Board, since permission of that body had not been obtained—a matter which had caused criticism in previous transactions. On the supposition that an application for the consent of the Federal Reserve Board would cause considerable delay, a new method of acquiring the Birmingham Bank stock was adopted. The stockholders of the Birmingham Bank were not notified of the change.

The offer of June 20th was never accepted and no action was taken upon it by the Trust Company. Instead two other corporations, Hillman Investment Company and Allegheny Bankshares, Inc., were brought into the arrangement. Hillman Company bought 763 of the 1,000 outstanding shares of the Birmingham Bank for cash for the account of the Trust Company, but in the name of Bankshares, Inc., financing the transaction with money borrowed by Bankshares partly from the Trust Company and partly from another bank. For the remaining 237 shares of stock of the Birmingham Bank, Hillman Company gave the holders 786 shares of the Trust Company stock, of which it owned a very large block. Hillman Company thus acquired all the stock of the Birmingham Bank (except 70 shares owned by directors) between July 25th and August 9th, the certificates being assigned in blank and delivered to Hillman Company or Bankshares from whom the Bank's stockholders received either cash or certificates of stock of the Trust Company. The directors' shares were delivered for cash between November, 1930, and January, 1931. Hillman Company thus became the sole stockholder of Birmingham Bank.

On January 13, 1931, the Trust Company by resolution offered to purchase the assets of the Birmingham Bank for $550,000 subject to liabilities. This offer was accepted by the Birmingham Bank, now controlled by Hillman Company, and duly consummated. The Birmingham Bank was liquidated, its shares of stock called for retirement and canceled, and its charter surrendered. The $550,000 was paid to Sheets, a director of Hillman Company who was the record holder of the stock of the Birmingham Bank, who turned it over to Bankshares. Just how the transaction was finally wound up is not material, except that nothing appeared which would amount to bringing in the Hillman Company as an agent for the Trust Company.

It thus appears that the whole question revolves about the single controverted point, whether or not Hillman Company in carrying out the scheme adopted was or was not the agent of the Trust Company. If it was, the entire transaction in law would stand as though the Trust Company had acquired the stock itself, and at that point a reorganization would be effective and that condition of the statute met. In such case, the subsequent acquisition by the Trust Company of the assets of the Birmingham Bank would have amounted to little more than an internal readjustment by the Trust Company of its own property, and the fact that the plan as previously conceived was not actually carried out would make no practical difference.

However, at this point the appellants' case is met by a finding of fact by the Board of Tax Appeals to the effect that Hillman Company was not acting as agent for the Trust Company. The Board said: "Giving due consideration to all the evidence in the case, we are unable to find that either the Hillman Company or Bankshares, Inc., or both, were acting as the agent of the Trust Company in acquiring the stock of the Birmingham Bank. In order to constitute the agency relationship it must appear that these corporations or at least one of them was acting upon authority from the Trust Company or the Trust Company ratified the action taken. Clearly the Trust Company did not authorize the action to be taken in its behalf, nor did it expressly or impliedly ratify it. Accordingly the contention of the petitioner on this point is denied. * * * The most than can be said of the arrangement between the executive officers of the Trust Company and Hillman is that it was a gentleman's agreement, entered into by the officers in their individual capacity. So far as the record shows it was never ratified or adopted either by the directors of the Trust Company or by its stockholders."

■■ The existence of a disputed agency may be a question of fact even where the evidence is not conflicting if different conclusions can reasonably be drawn therefrom. That is the situation in this case. The finding of no agency by the Board of Tax Appeals is a determination of fact for administrative purposes, not subject to re-

view. Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289. As to it, the only question for this court is whether the evidence was legally sufficient to sustain it, and upon this point we hold that it was.

From the fact situation thus presented, it follows as a matter of law that, regardless of the question whether or not the petitioner's stock was exchanged in pursuance of a plan of reorganization, the corporations involved were not actually parties to a reorganization. As found by the Board of Tax Appeals, what happened, in simplest terms, was that a stockholder of the bank exchanged his bank stock for Trust Company stock (and a small amount of cash) which was owned by a third corporation acting entirely independently without authorization or subsequent ratification by the Trust Company. Thereafter this third corporation sold to the Trust Company all the stock of the bank which it had thus acquired, the bank was liquidated, and the stock retired. It cannot be contended that a transfer accomplished in this manner, even though it resulted in a final absorption of the bank by the Trust Company, amounted to a reorganization if, as has been found by the Board of Tax Appeals, the action of the intermediary was not by virtue of any agency or binding obligation of any kind to the bank.

The order of the Board is approved.

BUFFINGTON, Circuit Judge, dissents.