WILLIAM HOLTON GEORGE AND AMELIA MORAST GEORGE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 52570, 52571. Filed May 31, 1956.

*Thomas A. Williams, Esq.*, for the petitioners.
*Robert B. Wallace, Esq.*, for the respondent.

## OPINION.

ARUNDELL, *Judge:* The question is whether the conceded gain of $308,783.48 should be recognized under the general rule stated in section 112 (a) of the Internal Revenue Code of 1939 or whether no part of the gain should be recognized under the exception stated in section 112 (b) (3).[1]

Petitioners contend that both W. H. George, Inc., and Louisiana Corporation were parties to a reorganization; that petitioner exchanged stock in W. H. George, Inc., solely for stock in Louisiana

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \* \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(g) DEFINITION OF REORGANIZATION.—As used in this section (other than subsection (b) (10) and subsection (1)) and in section 113 (other than subsection (a) (22)).—

(1) The term "reorganization" means (A) a statutory merger or consolidation, or \* \* \* (C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded, or (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred \* \* \*

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another.

Corporation; that the exchange was in pursuance of the plan of reorganization and that, therefore, no gain should be recognized.

First, we must determine whether there was a "reorganization" within the meaning of that term as defined in section 112 (g) (1) of the 1939 Code. (See footnote 1, *supra.*) Petitioners rely principally upon clause (A) of the definition but they also contend that the facts support a reorganization under either clause (C) or (D) of the 1939 Code.

Congress inserted the word "statutory" in clause (A) for the first time when it enacted the Revenue Act of 1934, at which time it eliminated the parenthetical phrase.[2] Although this change was intended somewhat as a restriction of the definition of "reorganization," the evil that Congress intended to correct was the practice of casting taxable "sales" into the form of nontaxable reorganizations. See H. Rept. No. 704, 73d Cong., 2d Sess., 1939–1 C. B. (Part 2) 554, 564.[3] Care was taken, however, to preserve in the definition as much uniformity among the 48 States as possible. See S. Rept. No. 558, 73d Cong., 2d Sess., 1939–1 C. B. (Part 2) 586, 598.[4] So, in enacting the Revenue Act of 1934, Congress included in the definition of the term

---

[2] Clause (A) of the then existing law, section 112 (i) (1), Revenue Act of 1932, read as follows: "The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation)."

[3] Among other things, the House Report stated:

The reorganization provisions have been in effect for many years, having been adopted in substantially their present form in 1924. They state in detail how each step of a reorganization should be treated for tax purposes. The policy was adopted of permitting reorganizations to take a wide variety of forms, without income-tax liability. As a result, astute lawyers frequently attempted, especially during the prosperous years, to take advantage of these provisions by arranging in the technical form of a reorganization, within the statutory definition, *what were really sales.*

\*　　\*　　\*　　\*　　\*　　\*

The committee proposes to limit the application of the reorganization provisions by two principal changes. \* \* \* In the second place, the definition of a reorganization has been restricted so that the definition will conform more closely to the general requirements of corporation law, and will limit reorganizations to (1) statutory mergers and consolidations; (2) transfers to a controlled corporation, "control" being defined as an 80 per cent ownership; and (3) changes in the capital structure or form of organization.

By these limitations the committee believes that it has removed the *danger that taxable sales can be cast into the form of a reorganization,* while at the same time, *legitimate* reorganizations, required in order to strengthen the financial condition of the corporation, *will be permitted.* [Italics supplied.]

[4] Among other things, the Senate Report stated:

Your committee is in complete agreement with the purposes of the House bill which aim at tax-avoidance schemes in this connection. However, some modifications are recommended *in order to bring about a more uniform application of the provisions in all 48 of the States. Not all of the States have adopted statutes providing for mergers or consolidations;* and, moreover, a corporation of one State can not ordinarily merge with a corporation of another State. *The committee believes that it is desirable to permit reorganizations in such cases,* with restrictions designed to prevent tax avoidance. Consequently, the committee recommends the insertion in the House bill of an addition to the definition of the term "reorganization" as follows:

"(B) the acquisition by one corporation in exchange solely for its voting stock: of at least 80 per centum of the voting stock and at least 80 per centum of the total number

"reorganization" clause (B) substantially as it was stated in the Senate Report, the only change being that instead of the words "in exchange solely for its voting stock" Congress enacted the words "in exchange solely for all or a part of its voting stock." Later, by section 213 (b) of the Revenue Act of 1939, Congress amended the definition to read as set out in footnote 1 above, by taking out of clause (B) the phrase "substantially all the properties of another corporation" and placing it in a separate clause, namely, clause (C).

It would appear from the above brief history of the reorganization provision that Congress never intended the gain or loss in a transaction such as the one now before us to be recognized. The two old corporations and the stockholders thereof fully and clearly intended to effectuate a consolidation of the two old corporations into a new corporation and in fact this was accomplished. The new Louisiana corporation continued the operation of the consolidated business in Jackson, Mississippi, and its right to do so was not questioned by the State of Mississippi. There was no taxable sale involved in the consolidation. Instead there was present the continuity of interest and business purpose tests which are prerequisites in every legitimate reorganization. Cf. *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462; *LeTulle* v. *Scofield*, 308 U. S. 415; *Cortland Specialty Co.* v. *Commissioner*, 60 F. 2d 937; *Gregory* v. *Helvering*, 293 U. S. 465; *Erie County United Bank*, 21 T. C. 636, 645; *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378; and *Helvering* v. *Leary*, 93 F. 2d 826.

The respondent, however, contends that notwithstanding all that occurred there could be no "statutory * * * consolidation" under clause (A) for the reason that under the Louisiana law [5] a domestic corporation and a foreign corporation could be consolidated only if the law of the government under which the foreign corporation was formed authorized such a consolidation, and that "It will suffice to say that the Mississippi Corporation was not authorized by the laws

---

of shares of all other classes of stock of another corporation; *or of substantially all the properties of another corporation;"*

The committee believes that these transactions, when carried out as prescribed in this amendment, *are in themselves sufficiently similar to mergers and consolidations as to be entitled to similar treatment.* [Italics supplied.]

[5] Louisiana Revised Statutes of 1950. Title 12. Corporations and Associations.

Sec. 47. Merger and Consolidation.

A. Any two or more corporations formed for the purpose of carrying on the same or similar business, and any one or more corporations and any one or more foreign corporations with authority to carry on the same or similar business may be:

(1) Merged into one of the corporations, or

(2) Consolidated into a new corporation to be formed under this Chapter; provided the foreign corporations are authorized by the law or laws of the government under which they were formed to effect the merger or consolidation.

B. Any corporations and any foreign corporations may be:

(1) Merged into one of the foreign corporations, or

(2) Consolidated into a new corporation to be formed under the law or laws of the government under which one of the foreign corporations was formed, provided the laws of such foreign government authorize the merger or consolidation.

of Mississippi to effect a consolidation." Cf. 39 Col. L. Rev. 933, 948. We need not, however, decide whether there was a reorganization under clause (A) if under one of the other clauses a reorganization occurred. *Helvering* v. *Minnesota Tea Co., supra.*

We think there was a reorganization within clause (C). Respondent concedes that as far as the transfer of all the assets and liabilities of Mississippi Corporation to Louisiana Corporation in consideration for 3,572 shares of stock of the latter is concerned, there was clearly a reorganization between those two companies within clause (C). He contends, however, that the same result does not follow as far as the transfer of assets and liabilities of W. H. George, Inc., to Louisiana Corporation is concerned. His reasons for this contention are that since W. H. George, Inc., did not transfer to Louisiana Corporation the 250 shares it held in Mississippi Corporation, it cannot be said that W. H. George, Inc., transferred "substantially all" of its properties as is required under clause (C). The respondent points out that the 250 shares represented on December 30, 1942, a value of $221,641.87 (one-half the value of the net assets of Mississippi Corporation) and that the net assets actually transferred by W. H. George, Inc., amounted to only $177,101.67 or about 44 per cent of the total. We do not agree with this contention. Both of the old corporations transferred 100 per cent of all the business assets and liabilities held between them. These net assets amounted to $620,385.40 for which Louisiana Corporation issued 5,000 shares of its capital stock having a par value of $500,000. This was all in accordance with the plan of reorganization and the December 30, 1942, agreement among the three corporations, which agreement provided in part:

Excepted from the assets to be transferred, etc., by the Old Corporations is the capital stock owned by W. H. George, Inc., *evidencing its equity in the net worth of the Old Mississippi Corporation.* [Italics supplied.]

This equity was in fact transferred to the new corporation in exchange for a separate certificate of 1,786 shares of the new corporation's stock, which certificate was immediately delivered to W. H. George, Inc., in surrender of the 250 shares it held in the old Mississippi Corporation. We hold, therefore, that both of the old corporations transferred all of their properties to the new corporation in exchange solely for its voting stock and that there was a reorganization under clause (C) of section 112 (g) (1) of the 1939 Code.

Both W. H. George, Inc., and Louisiana Corporation are clearly included within the term "a party to a reorganization" under the express language of section 112 (g) (2), *supra.* It is also clear that under the integrated plan of reorganization the purpose was that instead of the two old corporations there would be one new corporation. The plan was fully executed by the old corporations trans-

ferring all their net assets to the new for the latter's stock and then distributing the stock of the new corporation to the stockholders of the old corporations.

We hold, therefore, that since petitioner, in pursuance of the plan of reorganization, exchanged his 900 shares of stock in W. H. George, Inc., a party to a reorganization, solely for stock in Louisiana Corporation, a party to the reorganization, no gain shall be recognized on the exchange.

Due to some minor adjustments to be made for the years 1942 and 1943 under section 6 of the Current Tax Payment Act of 1943, not here in dispute,

*Decisions will be entered under Rule 50.*