In the Matter of Proving the Will of HERMAN BERGDORF, Deceased.

WILLIAM JUNGHANS et al., as Executors, Appellants; GUARANTY TRUST COMPANY OF NEW YORK, Respondent.

Will — intent of testator must be carried out if possible — Code Civ. Pro. § 2636 — appointment of trust company as executor of will — merger of such company with another — Banking Law, §§ 36–40 — when latter company entitled to letters testamentary.

1. The intent of a testator as to how, when and by whom his estate shall be conserved, paid out and distributed will be, if needs be, strenuously searched for in the testamentary language, and, when ascertained, will be carried out in so far as it is not inimical to law. This rule is not affected or modified by section 2636, Code of Civil Procedure. (*Hartnett* v. *Wandell*, 60 N. Y. 346, followed.)

2. The Morton Trust Company was merged with the Guaranty Trust Company of New York in 1910 under the provisions of sections 36–40 of the Banking Law (Cons. Laws, chap. 2). Previous to that time appellants' testator, who died in 1911, had named the Morton Trust Company in his will as one of his executors. *Held*, that the Guaranty Company cannot validly base its application for letters testamentary upon the ground that it is a continuation of or identical with the Morton Company. But by the provisions of section 39 of that statute the merger transferred to the Guaranty Company "all and singular the rights, franchises and interests of" the Morton Company "in and to every species of property, real, personal and mixed, and things in action thereunto belonging," and empowered the Guaranty Company to "hold and enjoy the same and all rights of property, franchises and interests in the same manner and to the same extent" as the Morton Company would if it "should have continued to retain the title and transact the business of" the Morton Company. The merger in effect substituted the Guaranty Company for the Morton Company, and the latter was, by virtue of the statute, designated as executor, and as such is entitled to letters testamentary.

*Matter of Bergdorf*, 149 App. Div. 529, affirmed.

(Argued June 4, 1912; decided October 15, 1912.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 8, 1912, which reversed an order of the New York County Surrogate's Court denying the petition of the respondent herein for the issue to it of letters testamentary as one of the executors named in the will of Herman Bergdorf, deceased.

The facts, so far as material, are stated in the opinion.

*Herbert C. Brinckerhoff* and *John Patterson* for appellants. The language used in the will does not nominate the respondent as an executor and trustee. (*Thurber* v. *Chambers*, 66 N. Y. 42; *Matter of Wells*, 113 N. Y. 396; *Patchen* v. *Patchen*, 121 N. Y. 434.) The result of the merger of the Morton Trust Company by the respondent under the Banking Law was the extinction of the corporation merged, and as this was prior to the testator's death, such merger could not confer on the respondent rights which never existed. (Cons. Laws, ch. 2, §§ 36–40.) A testamentary nomination of a trust company is made subject to being defeated by reason of voluntary or involuntary change in the status of such nominee. (*Matter of Silkman*, 48 Misc. Rep. 156.) The testator did not intend by his will to appoint the appellant one of his executors and testamentary trustees. (*Hartnett* v. *Wandel*, 60 N. Y. 346.)

*Charles Howland Russell* and *Russel S. Coutant* for respondent. The legislature has full power to declare and establish the status of domestic corporations upon merger. (*People* v. *N. Y. C. & S. L. R. R. Co.*, 129 N. Y. 474; *U. S.* v. *Ninety-nine Diamonds*, 139 Fed. Rep. 961.) In the case of a merger no new corporation is formed; one corporation is absorbed into another. The corporation so merged loses its separate and distinct identity; but its corporate existence is continued in the corporation into which it is merged. (*People ex rel. N.*

*Y. P. Co.* v. *Rice,* 57 Hun, 486; *People* v. *N. Y. C. & St. L. R. R. Co.,* 129 N. Y. 474; *R. R. Co.* v. *Georgia,* 98 U. S. 359; *Lee* v. *A. C. L. R. Co.,* 150 Fed. Rep. 775; *V. & Y. C. Tel. Co.* v. *C., etc., Tel. Co.,* 30 So. Rep. 725; Thomp. on Corp. § 6037; 3 Purdy's Beach on Corp. § 1273; *Matter of N. Y. El. R. R. Co.,* 43 N. Y. S. R. 651; 133 N. Y. 690; *K. & W. R. R. Co.* v. *Missouri,* 152 U. S. 301; *Bank of Long Island* v. *Young,* 101 App. Div. 88.) The language used in the will in the appointment of executors and trustees by its terms includes the Guaranty Trust Company of New York as successor of the Morton Trust Company. (Cons. Laws, ch. 2, § 40; Thomp. on Corp. § 6025.)

COLLIN, J. The Surrogate's Court of the county of New York denied the application of the Guaranty Trust Company that letters testamentary under the will of Herman Bergdorf be issued to it. The Appellate Division reversed the order of the Surrogate's Court and granted the application. The facts involved are not in dispute.

Herman Bergdorf died January 11, 1911. The will was dated November 2, 1904, and was probated February 28, 1911. It by elaborate provisions disposed of real and personal estate of a value exceeding $100,000, and its seventh paragraph was as follows: " I hereby nominate and appoint as executors of this my last Will and Testament, and trustees of the trusts herein created my friend William Junghans, Gustav Engelke and Morton Trust Company, all of the City of New York, in the State of New York, and the survivors and successors of them." On January 27, 1910, the Morton Trust Company was merged into the Guaranty Trust Company of New York under and in the manner provided in sections 36 to 40, inclusive, of the Banking Law. Upon the probate of the will, letters testamentary were issued to Junghans and Engelke. The statute gave to each of the Morton Trust Company and the Guaranty Trust Company power

to be appointed and to accept the appointment of executor of or trustee under the last will and testament of any deceased person. We are to determine whether or not the Guaranty Trust Company is entitled to have issued to it from the Surrogate's Court of New York county letters testamentary as an executor of the will.

In order to establish its right to the letters testamentary, the Guaranty Trust Company must seek and find in the will a designation of itself as an executor. The title and general powers of an executor have their source in the will under which the executorship exists. Within the regulations and restrictions prescribed by law, a testator may commit the custody and administration of his estate to such executor or executors as he pleases, and his selection and designation alone it is which invests them with authority and power. The letters testamentary, founded upon the probate of the will, neither create the executor nor confer title or power upon him. They are the authentic evidence that the will has been duly proven; that the testator competently and in fact made the selection and designation of the executor, and that permission has been given the executor, by the court having jurisdiction, to exercise the powers conferred by the testator through the will. The selection and designation may be immediate and expressed, or it may be constructive or by implication, or it may be delegated by the will. The fundamental and ever-present principle that effect shall be given to the ascertainable and lawful intention of the testator, if expressed in the instrument, covers this act with its beneficent and protecting sway and impels judicial tribunals to thrust aside technicalities, fill in as necessary that which is missing and interpret liberally that which is written in progressing to their decisions committing the execution of wills to those who were within the contemplation and intention of the testator. The intent of a testator as to how, when and by whom his estate shall be conserved, paid out and

distributed will be, if needs be, strenuously searched for in the testamentary language and when ascertained will be carried out in so far as it is not inimical to law. (*Hartnett* v. *Wandell*, 60 N. Y. 346; *Hill* v. *Tucker*, 13 How. [U. S.] 458; *Brown* v. *Just*, 118 Mich. 678. See also Code of Civ. Pro. §§ 2640, 2641.) This rule is not affected or modified by the statutory provision within the Code of Civil Procedure (§ 2636) that after a will has been admitted to probate, the person or persons named therein as executors, who are competent by law to serve, and who appear and qualify, are entitled to letters testamentary. This phase of the question was clearly and thoroughly discussed in *Hartnett* v. *Wandell*, cited above, and the conclusion was there reached and declared that the provision applies to and includes each and every person who can trace his authority to the will as its source or derives his power mediately or immediately from it.

A position of the respondent is that the Morton Trust Company survived the merger of itself into the Guaranty Company and still exists in and as a part of the latter and that the two corporations are identical. If this position is sound and tenable, it requires that letters testamentary be issued to the Guaranty Company. (*City National Bank of Poughkeepsie* v. *Phelps*, 97 N. Y. 44; *Michigan Ins. Bank* v. *Eldred*, 143 U. S. 293.) Whether it be tenable depends upon and is determined by the effects the merger worked. Hence we must turn to those sections of the Banking Law under which the merger was accomplished. (Cons. Laws, ch. 2.) It could not have taken place without statutory authority and the legislature fixed the indisputable and exclusive effects of it. (*People* v. *N. Y., Chicago & St. Louis Railroad Co.*, 129 N. Y. 474.)

Section 36 authorizes any two or more trust companies organized as it specifies "to merge one or more of said corporations into another in the manner" provided in it and the following section. That manner includes the

return to the corporation into which the other or others are merged of the certificates of stock held by the stockholders in the company or companies merged into the other and the issuance in lieu thereof by the company into which the merger is effected of new certificates of its own stock; and the appraisal of the value of the shares of stock of dissentient stockholders of the merged company or companies and the payment of that value and cancellation of the stock.  Section 39 is: " Effect of merger.— Upon the merger of any corporation in the manner herein provided all and singular the rights, franchises and interests of the said corporation so merged in and to every species of property, real, personal and mixed, and things in action thereunto belonging shall be deemed to be transferred to and vested in such corporation into which it has been merged, without any other deed or transfer, and said last-named corporation shall hold and enjoy the same and all rights of property, franchises and interests in the same manner and to the same extent as if the said corporation so merged should have continued to retain the title and transact the business of such corporation; and the title and real estate acquired by the said corporation so merged shall not be deemed to revert by means of such merger or anything relating thereto."  Section 40 relates to the rights of creditors and others having relations with merged corporations. It continues and imposes those rights and relations upon the corporation into which the other or others shall be merged, and provides, " and no suit, action or other proceeding then pending before any court or tribunal in which any corporation that may be merged is a party shall be deemed to have abated or discontinued by reason of any such merger, but the same may be prosecuted to final judgment in the same manner as if the said corporation had not entered into the said agreement, or the said last-named corporation (that into which the other or others shall be merged) may be substituted in the place

of any corporation so merged as aforesaid, by order of the court in which such action, suit or proceeding may be pending."

Those statutory provisions state plainly the effects of the merger of the Morton Company into the Guaranty Company. The former company became (with the nominal exception hereinafter stated) rightless, propertyless and powerless; and the latter company was enlarged by the absorption of all that the former surrendered. The former disburdened itself of each and every obligation, undertaking and relation, and the Guaranty Company absorbed and assumed them all. The Guaranty Company was authorized to issue new shares of stock in favor of the stockholders of the Morton Company in lieu of the shares of the latter surrendered and canceled. But the Morton Company did not surrender its corporate existence. It was not dissolved. It remained a corporation, but for the single purpose and with the sole power of being sued or proceeded against upon and defending against causes of action alleged to exist against it at the time of the merger. All the other powers bestowed upon it and which were evidenced by its certificate of incorporation and the statute law relating to it were by the merger transferred to the Guaranty Company. A corporation may exist though it possesses no property. A corporation may have a partial as well as a total extinction, and a legislature may enact that the merged corporation shall be extinguished by the merger, except in so far as the statute shall keep it nominally alive for a specified purpose. Our conclusion is that the Morton Trust Company does not exist within or as a part of the Guaranty Company, and the two are not identical. As a legal being, a corporate entity, it retained the one activity and power, and otherwise is non-existent. This conclusion has support in judicial decisions. (*Central Railroad & Banking Co.* v. *Georgia*, 92 U. S. 665; *Keokuk & Western Railroad Co.* v. *Missouri*, 152 U. S. 301; *Adams* v. *Yazoo & M. V. R. R. Co.*, 77 Miss. 194;

*Railroad Co.* v. *Georgia,* 98 U. S. 359.) It follows that the Guaranty Company cannot validly base its application for letters testamentary upon the ground that it is a continuation of or identical with the Morton Company. For all the purposes of our consideration, the latter ceased to exist when the merger was accomplished.

This conclusion does not bring the discussion to a close. It was within the power of the legislature to enact that a trust company, into which another trust company lawfully designated as an executor had been merged subsequent to the making and prior to the probate of the will, should be the transferee of the privilege or right of being the executor. No constitutional provision forbids the enactment and the entire legislative power of the people is vested in the legislature, except as withheld by the Constitution of the state or restricted by the Federal Constitution. The effects of the enactment would not be in doubt. Applied to the case at bar, and assuming that it existed prior to the death of the testator, it would enable the Guaranty Company to trace to the will the designation and appointment of itself as an executor and require the issuance of letters testamentary to it. The testator in making the will and appointing the executors was and remained throughout the following years of his life subject to the relevant existing statutes. The right to make a testamentary disposition of property is not an inherent right; nor is it a right guaranteed by the fundamental law. Its exercise to any extent depends entirely upon the consent of the legislature as expressed in their enactments. It can withhold or grant the right, and if it grants it, it may make its exercise and its extent subject to such regulations and requirements as it pleases. It may declare the rules under which the administration of the estate may be committed to executors and make compliance with them mandatory. (*Matter of Delano,* 176 N. Y. 486; *Matter of Will of Fox,* 52 N. Y. 530; *United States* v. *Perkins,* 163 U. S. 625.) A testator

intends and must be deemed to intend the results which the operation of those rules produce. They affect the testamentary disposition and provisions as though embodied in the will; and in case the cited sections of the Banking Law provide that the merger of the Morton Company transferred to the Guaranty Company the right, privilege or interest, if any, which the designation of it as an executor originated and thereby entitled the latter to the executorship, thus it was that the testator intended.

In reading the sections we do not regard the intention of the testator, but that of the legislature. Their language is broadly and conspicuously comprehensive. The merger transferred to the Guaranty Company "all and singular the rights, franchises and interests of" the Morton Company "in and to every species of property, real, personal and mixed, and things in action thereunto belonging," and empowered the Guaranty Company to "hold and enjoy the same and all rights of property, franchises and interests in the same manner and to the same extent" as the Morton Company would if it "should have continued to retain the title and transact the business of" the Morton Company. This language means not only that every right, privilege, interest or asset of conceivable value or benefit then held by the Morton company (except the right to be a corporation) should pass into and be absorbed by the Guaranty Company, but also that every right, privilege, interest or asset of conceivable value or benefit then existing which would inure to the Morton Company under an unmerged existence should inure to the Guaranty Company. Nothing appertaining to the Morton Company was to be lost, forfeited or destroyed.

The designation of the Morton Company as an executor created a privilege or an interest in the estate of the testator appertaining to that company. The privilege or interest was not complete or vested; it was incomplete,

potential and ambulatory. From it, undisturbed until the testator's death, issued the absolute interest of an executorship and the power to participate in the control and administration of the testator's estate and receive the legal fees and commissions. That interest had no source or origin other than the will and the designation. The testator's death did but complete and vest that which theretofore existed. It existed, although in an incomplete, imperfect and dependent condition, from the making of the will and at the time the merger of the Morton Company was consummated. Ignorance on the part of the Morton Company of its existence did not affect it. Through it that company would have been an executor and entitled to the letters testamentary if it had "continued to retain the title and transact the business of such corporation." The merger transferred it to the Guaranty Company and in effect substituted that company for the Morton Company. The Guaranty Company was entitled to hold and enjoy it even as would the Morton Company under an unmerged existence. By virtue of the statute, effective as a part of the will, the Guaranty Company was designated as an executor and as such is entitled to receive the letters testamentary.

For the reasons stated the order should be affirmed, with costs payable out of the estate.

CULLEN, Ch. J., WERNER, HISCOCK and CHASE, JJ., concur; GRAY and WILLARD BARTLETT, JJ., concur in result.

Order affirmed.