JOHN J. WATTS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HUGH C. SICARD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PARKER SLOANE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 44061, 47451, 47973. Promulgated August 11, 1933.

*John F. McCabe, Esq., James P. Quigley, Esq.,* and *John J. Heberle, Esq.,* for the petitioners.

*W. E. Davis, Esq.,* and *Paul Waring, Esq.,* for the respondent

OPINION.

VAN FOSSAN: The petitioners in these proceedings contend that they exchanged all of the stock of Ferro Alloys for stock of the Vanadium Co. and bonds of Ferro Alloys guaranteed by the Vanadium Co.; that these two corporations were parties to a reorganization and that, therefore, under the provisions of section 203 (b) (2) of the Revenue Act of 1924, no gain may be recognized. The

respondent, on the other hand, contends that the transaction between Sloane and the Vanadium Co. was a sale by the petitioners of all of the capital stock of Ferro Alloys and that it resulted in the creation of income taxable to the petitioners.

The applicable statutes are sections 202 and 203 of the Revenue Act of 1924. Section 202 provides, in part, as follows:

(a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivision (a) or (b) of section 204, and the loss shall be excess of such basis over the amount realized.

\* \* \* \* \* \* \*

(d) In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized for the purpose of this title, shall be determined under the provisions of section 203.

Section 203 provides, in part:

(a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202 shall be recognized, except as hereinafter provided in this section.

\* \* \* \* \* \* \*

(b) (2) No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(h) As used in this section and sections 201 and 204—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation) \* \* \*.

In our opinion the determinative question is that of reorganization and, unless the transaction stated in the findings of fact constituted a reorganization of Ferro Alloys and the Vanadium Co., it is unnecessary to discuss whether there was an actual sale of the stock of Ferro Alloys by the petitioners or whether the transaction was an exchange of all of the stock of Ferro Alloys for stock of the Vanadium Co. and bonds of Ferro Alloys. If the two corporations were not parties to a reorganization the gain, if any, accruing to the petitioners by reason of the transaction is taxable.

Under the provisions of section 203 (h) (1) (A), hereinbefore quoted, the term "reorganization" means a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation). While the Vanadium Co. acquired all the capital stock of Ferro Alloys and, therefore, obtained a full and complete control of the latter cor-

poration, we are of the opinion that it does not appear that the two corporations were either consolidated or merged. A consolidation of two corporations involves the dissolution. of both and the transfer of their corporate assets and franchises to a new corporation. In a merger, on the other hand, one of two merged corporations loses its identity in the other. One corporation goes out of existence; the other corporation survives and the latter absorbs the property and franchises of the merged corporation whose stock it has acquired. *Railroad Co.* v. *Georgia*, 98. U.S. 359, 362; *Matter of Bergdorf*, 206 N.Y. 309; 99 N.E. 714; *Irvine* v. *N.Y. Edison Co.*, 207 N.Y. 425; 101 N.E. 358; *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 57 Fed. (2d) 188; affd., 287 U.S. 462; *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937.

In the *Cortland Specialty Co.* case, *supra*, cited with approval by the Supreme Court in *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, *supra*, the Circuit Court of Appeals for the Second Circuit, referring to state statutes relating to the consolidation and merger of corporations, said:

Undoubtedly such statutes vary in the different states particularly in respect to how far the constituent companies may be deemed to survive the creation of the *new or modified corporate structure*, but we believe that the general purpose of them all has been to continue the interests of those owning enterprises, which have been merged or consolidated, in another corporate form. * * * When describing the kind of change in corporate structure that permits exemption from these taxes, Section 203 *does not disregard the necessity of continuity of interests under modified corporate forms.* Such is the purpose of the word "reorganization" in Sec. 203 (b) (3) where a corporation exchanges its property "solely for stock or securities." [Italics ours.]

The petitioners contend that there was a merger of the two corporations arising out of the provisions of the agreement between Sloane and the Vanadium Co. In our opinion the evidence does not lead to this conclusion. Under the provisions of the agreement the Vanadium Co. did acquire all of the capital stock of Ferro Alloys. This acquisition, however, created merely a change in the stock ownership of the latter company. The agreement contains no provisions looking to the creation of a "new or modified corporate structure." Therefore, although the former stockholders of Ferro Alloys secured for their stock in that company an interest in Vanadium Co., the transaction was not within the provisions of section 203 (b) (2) for the reason that their interest was not continued under a new or modified corporate form.

Section 203 (b) (2) provides that "no gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities," etc. The evidence discloses no plan

of reorganization and the agreement between Sloane and the Vanadium Co. contains none. There is no provision in the agreement that Ferro Alloys should be dissolved upon the performance of the agreement. On the contrary, there is evidence in the terms of the agreement that it was the intention of the parties thereto that that company was to maintain its separate corporate entity after the performance of the contract and the delivery of the stock of Ferro Alloys owned by the petitioners. Part of the consideration paid to the petitioners for the stock transferred by them was, under the terms of the agreement, bonds of Ferro Alloys. Some of these bonds, unless previously called, were not to mature prior to January 1, 1932, or eight years after the execution of the agreement and six years after the date provided in the agreement for the dissolution of the escrow deposit of the Vanadium Co.'s stock. At the very time, therefore, when it is contended that a merger of Ferro Alloys was effected it was provided that Ferro Alloys should issue obligations not maturing before 1932. At such time, therefore, it could not have been in contemplation of the parties that Ferro Alloys would be dissolved upon the performance of the agreement set out in the findings of fact.

It appears that the Vanadium Co. was incorporated under the laws of the State of Delaware and had its office in New York City. Presumptively, therefore, it was authorized as a foreign stock corporation under the laws of the State of New York to do business in that state. Ferro Alloys was organized under the laws of the State of New York. Section 85 of article 8 of the Stock Corporation Law of the State of New York, relating to the merger of corporations, provides in effect, among other things, that any foreign stock corporation authorized to do business in the State of New York owning all the stock of any domestic stock corporation may file in the office of the secretary of state a certificate of such ownership, duly executed in accordance with the provisions of the section, and that thereupon all of the estate, property, rights, privileges, and franchises of such other corporation shall vest in and be held and enjoyed by such possessor corporation as fully and entirely as the same were before held by such other corporation.

The evidence does not disclose that the Vanadium Co. at any time filed the certificate provided in the quoted statute. While it may be that a legal merger of Ferro Alloys and the Vanadium Co. might be effected without the filing of the certificate provided, yet evidence that the certificate had been filed contemporaneously with performance of the agreement between Sloane and the Vanadium Co. would be of weight with reference to the intent of the parties to merge Ferro Alloys with the Vanadium Co. Lack of such evidence is at

least of some significance respecting the existence of a contrary intent.

It is true that the facts show that Ferro Alloys was dissolved in July 1928, but this date was several years after the performance of the agreement and the dissolution can not, therefore, be held to be evidence that an intention to merge the two corporations existed at the time of the performance of the transaction now in question.

It seems to us apparent that neither a merger nor a consolidation in the ordinary sense of the words occurred, nor do we believe in the face of the facts that the transaction was one of those " things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words * * * " embracing " circumstances difficult to delineate but which in strictness can not be designated as either a merger or consolidation," as was observed by the Supreme Court in *Pinellas Ice & Cold Storage Co., supra*. While the Supreme Court indicated in the above decision that it deemed the opinion of the circuit court in the *Pinellas* case to be too strict and that the language in parentheses in the statutory definition of a reorganization was intended to work an expansion or enlargement of the meaning of the words, it remains for us to determine whether the instant situation satisfies such expanded definition. In the construction of the language referred to the words " merger or consolidation " are still of guiding import. The transaction must resemble a merger or consolidation, though it fails to satisfy all of its legal requirements.

In the case before us, as already appears, there are certain facts of importance that weigh heavily against a conclusion that the transaction was " of the nature of a merger or consolidation." Definite evidence of an intention to effect a merger or consolidation is lacking. There was no provision for the dissolution of Ferro Alloys. The commitments assumed by it indicate an intended continuation of existence. Such obligations are not consistent with impending extinction. We believe them to be so foreign to the concept of a merger or consolidation that it can not be said that the transaction partook of the nature of a merger or consolidation. We, therefore, conclude that the transaction here involved did not constitute a reorganization under the statute and that any gain resulting to the petitioners therefrom must be recognized.

There is another fact which injects itself into the consideration of the case, and that is the agreement on the part of the Vanadium Co. to pay in cash the sum of $298,815.50 to the holders of certain obligations due under chrome contracts with Ferro Alloys and $40,000 to petitioner Sloane or his nominee on account of obligations due to the Niagara Falls Power Co. from Ferro Alloys.

Though the parties stipulated that these payments did not of themselves constitute income to the petitioners, this does not remove the question of the effect of these payments on the alleged reorganization. Ferro Alloys was obligated on these accounts to the amount of $338,815.50. When Vanadium paid these accounts Ferro Alloys was relieved of the obligations to the creditors to the same extent as though it had been paid the cash by Vanadium and had in turn paid the obligations in the stated amount. Thereafter Vanadium appeared on the books of Ferro Alloys as a creditor. In view of these facts, can it be said that the consideration for the delivery of Ferro Alloys stock was solely stock or securities?

The petitioners have not objected to the valuation of the securities made by the respondent in his computation of the deficiency in tax. This valuation must, therefore, be presumed to be correct.

Reviewed by the Board.

*Decisions will be entered under Rule 50.*

STERNHAGEN, concurring: I agree that this was not a statutory reorganization, but I would place less emphasis upon the omission to dissolve the Ferro Corporation. In other words, I should say that in a case which was otherwise within part (A) of the definition, there might be a statutory reorganization despite the continued legal existence of the corporations involved.

LEECH and ADAMS agree with the above.

---

TRAMMELL, dissenting: In my opinion, the facts in this case bring it squarely within the reorganization provisions of the statute as interpreted by the Supreme Court in the *Pinellas* case and by the court of appeals in the *Cortland Specialty* case, cited in the above case. The reorganization provisions do not require that one corporation be dissolved. The reorganization as defined in the statute is not limited to a technical merger or reorganization, but is made broader by the parenthetical clause. There was, in my opinion, the *continuing interest* which the above decisions referred to as being necessary.

---

ARUNDELL, dissenting: In my . opinion the facts bring the case within the reorganization provisions of the statute. I think that too much stress is placed on the fact that dissolution of Ferro Alloys was delayed for several years after the acquisition of its stock by Vanadium. The statute does not in terms require dissolution at any time. While dissolution is a usual concomitant of a strict merger or consolidation, the parenthetical clause in section 203 (h)

(1) extends the application of the statute "to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words—so as to embrace circumstances difficult to delimit but which in strictness can not be designated as either merger or consolidation." *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U.S. 462. The effect of the majority opinion is to disregard the words within the parentheses and this the Supreme Court in the *Pinellas* case has said very definitely may not be done. Nor is it material that petitioners received bonds of the Ferro Alloys Co. as well as stock in the Vanadium Co. Section 203 (b) (2) contemplates just such cases. There was here present that continuity of interest emphasized in *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937, and *Pinellas Ice & Cold Storage Co.*, *supra*.

SMITH, BLACK, and GOODRICH agree with the above dissent.