A. L. MILLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

IDA W. HAWK, EXECUTRIX, ESTATE OF HENRY C. HAWK, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 60689, 60690. Promulgated February 13, 1934.

*Bernard J. Onen, Esq.,* and *Homer Hendricks, Esq.,* for the petitioners.

*James K. Polk, Esq.,* for the respondent.

1062

1064

OPINION.

MARQUETTE: The petitioners assert that they are not taxable on the gain arising from the exchange of part of their stock in the News Co. for a part of the stock of Publications, Inc. They con-

tend that there was a reorganization within the meaning of subsection (i) (1) of section 112 of the Revenue Act of 1928, with the result that subsections (b) (3) and (c) (1) of the same section apply.

Subsection (i) (1) provides:

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form or place of organization, however effected.

Disregarding the contract of sale and giving the cryptic sign " Ex." the force of altering the written contract of subscription for stock, we find that what actually occurred was that Publications, Inc., purchased 600 shares of stock of the News Co. (part of which belonged to Miller and Hawk) for $375,000 cash, and acquired the remaining 200 shares from Miller and Hawk in exchange for 6,250 shares of its own common stock. Publications, Inc., was authorized to issue 150,000 shares of common stock. Of this amount it sold 49,988 shares to subscribers, issued 12 shares at its organization, reserved for other purposes 89,500 shares, and did not issue 10,500 shares. It also issued and disposed of 52,000 shares of its preferred stock. The News Co. has not been dissolved and, so far as the record discloses, except perhaps the personalty and realty which Miller and Hawk reserved the right to withdraw, it possesses the same property it had before its stock was sold and exchanged, and is doing the same business. There was no alteration in its corporate or capital structure. The only thing that was changed was the ownership of its stock.

There was no transfer of any of the assets of the News Co. to Publications, Inc., and neither the News Co. nor its stockholders came into control of Publications, Inc. There was no recapitalization of either corporation and there was no change in identity, form, or place of organization. So parts (B), (C), and (D) of subsection (i) (1) do not apply. Publications, Inc., did not acquire any, much less substantially all, of the assets of the News Co. It did acquire all the capital stock of the latter company. This fact, the petitioners insist, brings this case within the subsection. They further assert that if this is not sufficient, then, since Miller and Hawk exchanged one fourth of the capital stock of the News Co. for a comparatively small amount of the stock of Publications, Inc., there was a continuing interest on the part of the stockholders of the News Co.

which converted what was a sale and exchange of stock into a reorganization.

In *Pinellas Ice Co.* v. *Commissioner*, 287 U.S. 462, the Supreme Court construed a provision of the Revenue Act of 1926 similar to that which we are called upon to apply. There the Court said:

The paragraph in question directs—" The term ' reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation)." The words within the parenthesis may not be disregarded. They expand the meaning of "merger" or "consolidation" so as to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words—so as to embrace circumstances difficult to delimit but which in strictness cannot be designated as either merger or consolidation. But the mere purchase for money of the assets of one Company by another is beyond the evident purpose of the provision, and has no real semblance to a merger or consolidation. Certainly, we think that to be within the exemption the seller must acquire an interest in the affairs of the purchasing company more definite than that incident to ownership of its short-term purchase-money notes. This general view is adopted and well sustained in *Cortland Specialty Co.* v. *Commissioner of Internal Revenue*, 60 F. (2d) 937, 939, 940. It harmonizes with the underlying purpose of the provisions in respect of exemptions and gives some effect to all the words employed.

Tested by the above rules we find nothing in the facts of this case which bears any resemblance to a consolidation or a merger. The News Co. certainly was not consolidated with Publications, Inc., and there was no new corporation arising on the ruins of either or both. Neither was the News Co. merged into Publications, Inc. *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937. When the Supreme Court speaks of the old company acquiring an interest in the new, it is referring to a case where something occurred which partook of the nature of a consolidation or a merger, and where, in the language of the Court in *Cortland Specialty Co.* v. *Commissioner*, *supra*, the " interests of the stockholders and creditors of any company which disappears remain and are retained against the surviving or newly created company." Here no company disappeared. The creditors of the News Co. acquired no rights against Publications, Inc. Three fourths of the stockholders in amount of the News Co. had no rights against Publications, Inc., except to sell their stock for cash.

It is clear that the stockholders of the News Co., as a whole, had no right to acquire any interest in Publications, Inc. The News Co. was not a party to any of the agreements. The contracts of Miller and Hawk were personal to themselves. In the absence of anything

bearing the slightest resemblance to a consolidation or to a merger, we are of opinion that the fact that the owners of one fourth of the stock of the News Co. exchanged that proportion of the stock for a small minority interest of the common stock of Publications, Inc., did not convert what was, in fact, a mere exchange of stock into a reorganization, as that term is defined in section 112 (i) of the Revenue Act of 1928. Respondent is approved on this issue. *John J. Watts*, 28 B.T.A. 1056; *Minnesota Tea Co.*, 28 B.T.A. 591; *Central Natl. Bank of Lincoln, Nebraska*, 29 B.T.A., 530.

Under the facts we have found with reference to the use by Henry C. Hawk of his automobile in his business, his executrix is entitled to take as a deduction the sum of $2,056.84.

Reviewed by the Board.

> *Judgment in Docket No. 60689 will be entered for the respondent. Judgment in Docket No. 60690 will be under Rule 50.*