THE BALLWOOD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66312. Promulgated May 4, 1934.

*S. Leo Ruslander, Esq.*, for the petitioner.
*Elden McFarland, Esq.*, for the respondent.

OPINION.

Smith: The respondent has determined that the exchange by the petitioner of all the capital stock of the Fabricating Co. for a portion of the capital stock of the Midwest Co. resulted in a taxable gain to the petitioner, measured by the difference between the cost to it of the Fabricating Co. stock and the fair market value of the shares of the Midwest Co. stock received in exchange therefor. The petitioner contends that the exchange in question was a nontaxable exchange made pursuant to a plan of reorganization under section 112 (b) (3) of the Revenue Act of 1928.

The pertinent provisions of the statute read as follows:

SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) *Exchanges solely in kind.*—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

(4) SAME—GAIN OF CORPORATION.—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganizatiton.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(i) *Definition of reorganization.*—As used in this section and sections 113 and 115—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

(j) *Definition of control.*—As used in this section the term "control" means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

We are in accord with the respondent's contention that the several transactions which took place in the performance of the agreement between the petitioner and the Midwest Co. must be viewed separately for the purpose of determining whether the exchanges made in such transactions are taxable under the quoted provisions of the statute. For instance, the first step in carrying out the agreement was the exchange by the petitioner of a part of its assets for all of the capital stock of the Fabricating Co. Unquestionably this transaction viewed separately constituted a reorganization within the meaning of section 112 (b) (4) and (i) (1) (B) and (i) (2) resulting in no taxable gain to the petitioner. This is admitted by the respondent and we understand that the respondent has not sought to tax the petitioner upon any gain resulting from the exchange. The

second step was the exchange by the petitioner of all the capital stock of the Fabricating Co. for a portion of the stock of the Midwest Co. It is this exchange upon which the respondent has determined that the petitioner realized a taxable gain, measured by the difference between the cost of the Fabricating Co.'s stock and the value of the Midwest Co.'s stock received in exchange. The respondent contends that this exchange was not in itself a statutory reorganization or an exchange made in pursuance of any plan of reorganization.

While the exchange in question, the so-called second step, was made pursuant to the original agreement, the terms of which are stated in the letter of February 19, 1929, we do not think that the agreement as a whole must be considered " a plan of reorganization " merely because it was so designated by the parties. Conceivably an agreement entitled " a plan of reorganization " might be drawn up that would involve a series of statutory reorganizations, each taxable or nontaxable in its execution according to its own conditions. Or there might be an agreement involving a plan of reorganization as only a minor feature. Certainly we would not say that every separate transaction taking place under such an agreement was made " in pursuance of the plan of reorganization." See *E. F. Simms*, 28 B.T.A. 988. The reorganization contemplated by the statute, or the plan of reorganization, is the one of which the exchange sought to be taxed formed a necessary or vital part. In *Edison Securities Corp.*, 29 B.T.A. 483, we said:

As above indicated, the statute does not, as a general proposition, require that whenever a reorganization is found to have at some time occurred, all transactions in the shares before and after shall be embraced within the reorganization, so that losses and gains may not be recognized. * * *

In its usage in the statute under consideration we think that the term " in pursuance of the plan of reorganization " should not be construed to mean following merely in point of time (see *Humble* v. *St. John*, 234 Pac. 475), but in the sense of the definition quoted, that is, in consequence or prosecution of some definite plan.

Our question then is whether the second step, that is, the exchange by petitioner of the shares of the Fabricating Co. for shares of the Midwest Co. constituted in itself a statutory reorganization. If so, it was a reorganization under subdivision (A) of section 112 (i) (1):

* * * a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation) * * *.

We have held in several cases, following *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U.S. 462, and *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; certiorari denied, 288 U.S.

599, that mere acquisition by one corporation of a majority of the stock, or all the assets, of another corporation does not constitute a reorganization where such acquisition takes the form of a purchase and sale and does not result in or bear some material resemblance to a merger or consolidation. See *Minnesota Tea Co.*, 28 B.T.A. 591; *John J. Watts*, 28 B.T.A. 1056; *Central Nat. Bank of Lincoln, Nebr.*, 29 B.T.A. 719; *A. L. Miller*, 29 B.T.A. 1061. In *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, *supra*, it was stated:

> The paragraph in question directs: "The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation)." The words within the parenthesis may not be disregarded. They expand the meaning of "merger" or "consolidation" so as to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words—so as to embrace circumstances difficult to delimit but which in strictness cannot be designated as either merger or consolidation. But the mere purchase for money of the assets of one company by another is beyond the evident purpose of the provision, and has no real semblance to a merger or consolidation. Certainly, we think that to be within the exemption the seller must acquire an interest in the affairs of the purchasing company more definite than that incident to ownership of its short-term purchase-money notes. This general view is adopted and well sustained in *Cortland Specialty Co.* v. *Commissioner of Internal Revenue*, (C.C.A.) 60 F. (2d) 937, 939, 940. It harmonizes with the underlying purpose of the provisions in respect of exemptions and gives some effect to all the words employed.

Although the facts in the instant case show a situation well outside of that described in the *Pinellas Ice & Cold Storage Co.* case, said not to come within the statute, where there was a "mere purchase for money of the assets of one company by another" and where the selling corporation acquired no interest "in the affairs of the purchasing company more definite than that incident to ownership of its short-term purchase-money notes," we are, nevertheless, of the opinion that the transaction did not constitute a "reorganization" within the contemplation of section 112 (i) (1) of the taxing statute. The history of the reorganization provisions of the income tax acts is stated by the Circuit Court of Appeals in *Helvering* v. *Gregory*, 69 Fed. (2d) 809, as follows:

> * * * It [the section] first appeared in the Act of 1924, (section 203, (h) (1)(B)), and as the committee reports show, (Senate Report 398), was intended as supplementary to section 112 (g), (then section 203 (c)) ; both in combination changed the law as laid down in *U.S.* v. *Phellis*, 257 U.S. 156, and *Rockefeller* v. *U.S.*, 257 U.S. 176. In the House Report, (No. 179, 68th Congress 1st Sess.), and in the Senate Report, (No. 398), the purpose was stated to be to exempt "from tax the gain from exchanges made in connection with a reorganization in order that ordinary business transactions will not be prevented." * * *

The facts in the instant case show that the petitioner desired to sell or exchange a portion of its assets constituting only 29 percent of its total assets to the Midwest Co. for certain shares of stock in that company. It was apparently appreciated that if the exchange had been made directly with the Midwest Co. the petitioner would be under a large income tax liability. Apparently also to minimize such tax liability the Ballwood Pipe Fabricating Corporation was created, to which the petitioner transferred these assets in exchange for all of the capital stock of that corporation. Upon the receipt of such shares the petitioner transferred them to the Midwest Co. for shares of stock of that company which had a fair market value of $500,000. The shares of stock of the Midwest Co. received were only about 18 percent of the total number of shares of that company. The petitioner was not then in control of the Midwest Co. Shortly thereafter the petitioner distributed the Midwest Co. shares received to its sole stockholder as a dividend. We are not concerned with this latter transaction.

The proceeding before us bears a close resemblance to that of *John J. Watts, supra,* in which we held that the acquisition by one corporation of all of the stock of another was not of itself sufficient to constitute a " reorganization " if the transaction was not " of the nature of a merger or consolidation." We think that our opinion in that case is dispositive of the proceeding at bar.

The facts in this proceeding also bear a close resemblance to those involved in *Helvering* v. *Gregory, supra.* The court there held that no reorganization was effected by the transfer by an existing corporation to a newly formed corporation of certain investment shares of stock which the old corporation owned under an agreement whereby the new corporation issued all of its shares to the sole stockholder of the old corporation. In that case it was admitted that the new corporation was formed for the purpose of minimizing the income tax of the stockholder who wished to acquire the investment shares of stock held by the corporation without paying the surtax on the distribution of such shares. The new corporation was liquidated three days after its formation and upon surrender of its shares the stockholder received the investment stock. Although the transfer between the corporations came under the wording of section 112 (i) (1) (B) of the 1928 Act defining a reorganization as " a transfer by a corporation of * * * a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred," the court held that it was not the purpose of Congress to recognize as a reorganization a transaction which was no part of the conduct of the business, but was an added gesture

made in an effort to save taxes. While sanctioning the legitimate minimizing of taxes, the court declared that " To dodge the shareholders' taxes is not one of the transactions contemplated as corporate ' reorganizations.' " Although there are points of difference between the instant proceeding and the *Gregory* case in that the record contains no admission on the part of the petitioner that the creation of the Fabricating Co. was for the purpose of minimizing taxes, and the Fabricating Co. still remains in existence, we think that the points of difference are not material. The Fabricating Co. was an inactive corporation from the time of its organization and never transacted any business. It simply held the legal title to the assets transferred to it for the benefit of the Midwest Co.

We sustain the respondent's contention that the transaction in question was not a reorganization within the contemplation of the statute and that the petitioner is liable to income tax in respect of the difference between the cost basis of the assets transferred to the Fabricating Co. and the fair market value of the shares of the Midwest Co. received in exchange.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

STERNHAGEN concurs in the result only.

BLACK concurs in the result.

TRAMMELL and LEECH dissent.

---

ADAMS, concurring: While concurring in the result reached in the opinion in this case, I do not think the transactions here must be considered as two separate transactions. The offer to the Midwest Co. which was submitted by Edward J. Hughes, who was the president and the owner of all the common stock of petitioner, clearly indicates the purpose of the transaction to be as follows:

The Ballwood Company (hereinafter called " Ballwood ") hereby submits to your Company (hereinafter called " Midwest ") its proposal for an exchange of securities under a reorganization plan, of which the following is a part.

This purpose was accomplished by the circuitous route defined in the so-called " Reorganization Plan." The organization of the "Ballwood Pipe Fabricating Corporation ", the exchange of certain assets of petitioner for all its stock and the exchange of this stock for stock of the Midwest Co. were but steps in a single transaction—the exchange by petitioner of a part of its assets for stock of the Midwest Co.

In my opinion, the transaction must be viewed as a whole and when so viewed it results in a transaction on which gain or loss may be realized.