65 So.2d 776

**McCARTHY v. OSBORN et al.**

No. 39325.

April 27, 1953.

Rehearing Denied June 1, 1953.

Simon Herold, Shreveport, for plaintiff-appellant.

Cook, Clark & Egan; Foster, Hall & Smith, Shreveport, for defendants-appellees.

PONDER, Justice.

Plaintiff has appealed from a judgment of the district court sustaining an exception of no cause or right of action.

Plaintiff alleges that she is the owner of ten shares of capital stock in the Osborn Life Insurance Company; that the charter of that corporation contains the following provision:

"No stockholder shall sell, assign, convey, transfer or dispose of the capital stock of this corporation unless and until he shall have first offered the said share or shares of stock in writing to the Board of Directors of this corporation for the benefit of the shareholders of the corporation, which shareholders, within thirty days from the notice in writing to the Board of Directors of intention by the stockholder, shall have the right to purchase the said share or shares of stock at its book value as reflected by the books of the corporation on the first day of January of the year

in which the stock is offered for sale; provided that no shareholder shall have the right to purchase more of the share or shares offered for sale than the number of shares owned by him bears to the total stock issued unless and until all other stockholders have failed or refused to purchase their proportionate part of the shares offered for sale. No transfer, other than by death, of the shares of this corporation shall be valid or binding on the corporation unless the foregoing requirements have been met."

that the stock certificates also contain this provision; that during the month of October, 1947, Percy E. Osborn, President of the corporation, entered into a contract to sell the corporation to the College Education Insurance Company, Incorporated, or to the owners thereof; that she advised Osborn by registered mail that the contemplated sale would violate the provisions of the charter and stock certificates of the Osborn Life Insurance Company and that she desired to purchase the stock in accordance with her rights as a stockholder; that Osborn, after receiving her letter, and the other stockholders, did not go through with the sale; that Osborn, acting individually and as agent for all the stockholders, except the plaintiff, agreed that the transfer would be completed as soon as it could be handled in a manner to avoid the objection raised by the plaintiff; that in attempting to carry out this agreement the charters of both corporations were amended so as to include the provisions of the Louisiana law dealing with merger of corporations; that a contract was entered into between the corporations in order to carry out the terms of the so-called merger as will be more fully shown by reference to a certified copy of the contract hereto attached; that the so-called merger was not in truth and fact a merger but is a contract whereby the stockholders of the Osborn Life Insurance Company sold their stock to the College Education Insurance Company for the sum of $20 per share; that the contract was not a merger because the stockholders of the Osborn Life Insurance Company had no choice of maintaining an interest in the newly formed or purported merged company but could only dispose of their stock for cash in direct violation of the provisions of the charter and stock certificates of the Osborn Life Insurance Company; that plaintiff attended, either in person or through proxy, all the meetings of the Board of Directors and stockholders of which she was advised and at all time objected to the contemplated sale which was called a merger; that the book value of the stock of the Osborn Life Insurance Company was $8,000 on January 1, 1948; that she at various times advised the Board of Directors and stockholders at their meetings and in writing that they were not complying with the provisions of the charter and stock certificates and that she desired to exercise the option contained in the charter and stock certificates to purchase all of

the stock which the stockholders planned to sell; that none of the stockholders have offered their stock in writing to the Board of Directors in accordance with the provision in the charter and stock certificates; that by their failure to do so they have prevented her from purchasing all of the stock at its book value; that the stockholders and Board of Directors were either present or represented by proxy at all the meetings held in connection with the contemplated sale or merger and with the exception of the plaintiff voted for the so-called merger in spite of the plaintiff's offer and request to purchase the stock; that an offer was made to purchase all or part of the stock of the Osborn Life Insurance Company for a price considerably in excess of that received; that plaintiff had received a bona fide offer to purchase the stock of this corporation for the sum of $15,000 cash and the assumption of all liabilities of the corporation prior to the contemplation of this corporation being merged into the College Education Insurance Company, Inc.; that she informed the stockholders of this offer before the so-called merger was completed but in spite of this fact all of the stockholders except plaintiff voted to dispose of their interest in the corporation to the College Education Insurance Company, Inc. for the sum of $20 per share; that by the act of the stockholders, except plaintiff, she has been deprived of a profit of $7,000 because of their failure to comply with the provisions of the charter and stock certificates of the Osborn Life Insurance Com-

pany and that the stockholders are liable to her in solido for the sum of $7,000 of which she has been deprived by their action. She prayed for judgment in the amount of $7,000 with 5% interest per annum from judicial demand until paid.

The trial judge did not give written reasons for his judgment but counsel in their argument stated that the exceptions were sustained on the ground that no fraud had been alleged. Some time after the judgment sustaining the exceptions was rendered the plaintiff presented a supplemental and amended petition to the district judge wherein more detailed facts were set out to show fraud. The trial judge refused the admission of the supplemental petition.

We have carefully examined the petition and have arrived at the conclusion that the facts alleged are sufficient to show that by the manipulation of the Board of Directors and stockholders that the plaintiff was defrauded of her rights and prevented from having a proprietary interest in the so-called merged or new corporation.

According to the petition, the stockholders and the Board of Directors first attempted to sell the stock and assets of the Osborn Life Insurance Company. They abandoned their intention to sell when the plaintiff opposed it and offered to purchase the stock of the corporation which she had a perfect right to do under the provisions of the charter and stock certificates hereto-

fore set out. The allegations of the petition are to the effect that the so-called merger is nothing more than a sale. In other words, a sale disguised as a merger in order to eliminate the plaintiff's rights.

The indenture attached to the petition, being labeled as a merger, is nothing more than an outright sale of the corporation. The stockholders of the Osborn Life Insurance Company are to be paid $8,000, which amount is to be divided pro rata among them, upon the surrender and cancellation of their stock, and they are to have no interest or control in the new corporation. The refusal on the part of any stockholder of the Osborn Life Insurance Company to surrender his stock will not give the stockholder any right in the merged corporation but his pro rata share of the funds shall be held by the new corporation for the account of the stockholder.

Under the Business Corporation Act, now incorporated as LSA–Revised Statutes 12:1 et seq., a merger of corporations is authorized but the term "merger" is not defined. Therefore, it becomes necessary for us to ascertain what is the recognized meaning of the term "merger".

From a reading of the authorities and excerpts, hereafter recited and quoted, it is plain that the term "merger" has a well recognized meaning in the courts. A merger of two corporations is formed by the stockholders placing their assets and liabilities into a common pool and forming one single corporate body wherein the interest of stockholders of the two corporations are retained in the newly created corporation.

"The mere purchase for money of the assets of one corporation by another does not effect either a 'merger' or a 'consolidation.' Mercantile Home Bank & Trust Co. v. United States, 8 Cir., 96 F.2d 655." 27 Words and Phrases, page 126.

"A 'merger' of two corporations occurs when two corporations having a distinct body of stockholders desire to throw their assets and liabilities into a common pool and thereafter have their two enterprises operated and managed as one as incident to which reclassification and readjustment of capital structure may be involved. Havender v. Havender, Del.Ch., 2 A. 2d 143, 146." 27 Words and Phrases, page 125.

" 'Merger' of two or more corporations is neither a sale nor a liquidation of corporate property, but a consolidation of properties, powers, and facilities of constituent companies forming a new corporate entity; 'merger' being a method of incorporation by two or more companies into a single corporate body. While the constituent companies are deemed dissolved, their powers and privileges to the extent authorized by the merger contract or

the law are vested in the merged company as a new corporation. Berks County Trust Co. v. Kotzen, 326 Pa. 541, 192 A. 638, 639." 27 Words and Phrases, page 125.

■ Where either a "merger" or a consolidation of corporations is effected, new corporation acquires all assets, property rights, and franchises of dissolved corporations, and *their* stockholders become *its* stockholders. Mercantile Home Bank & Trust Co. v. United States, 8 Cir., 96 F.2d 655.

"What distinguishes the transaction as a 'merger' rather than a 'sale' is that what is paid for the properties is not money or a money measured obligation, but in whole or substantial part stock in the acquiring corporation, so that the former proprietors continue to have a proprietary interest therein. Commissioner of Internal Revenue v. Alabama Asphaltic Limestone Co., 5 Cir., 119 F.2d 819, 820, 821." 27 Words and Phrases, Pocket Part, "Merger".

The most thorough discussion of the definition of merger is found in the case of Cortland Specialty Co. v. Commissioner of Internal Revenue, 2 Cir., 60 F.2d 937, 939.

"Reorganization, merger, and consolidation are words indicating corporate readjustments of existing interests. They all differ fundamentally from a sale where the vendor corporation parts with its interest for cash and receives nothing more. Reorganization in the most ordinary sense suggest 'the formation of a new corporation that is in financial difficulties, for the purpose of purchasing the company's works and other property, after the foreclosure of a mortgage or judicial sale.' Morawetz Corp. § 812; Symmes v. Union Trust Co., C.C., 60 F. 830. While the term includes financial readjustments in ways other than by judicial sale, it does not properly embrace mere purchases by one company of the assets of another. Little Rock Chamber of Commerce v. Reliable Furniture Co., 138 Ark. 403, 211 S.W. 371. Reorganization is defined in subdivision (h)(1)(A) as including 'a merger or consolidation.' A merger ordinarily is an absorption by one corporation of the properties and franchises of another whose stock it has acquired. The merged corporation ceases to exist, and the merging corporation alone survives. A consolidation involves a dissolution of the companies consolidating and a transfer of corporate assets and franchises to a new company. In each case interests of the stockholders and creditors of any company which disappears remain and are retained against the surviving or newly created company. Atlantic & G. Railroad Co. v. [State of] Georgia, 98 U.S. [359], at page 362,

25 L.Ed. 185; Matter of Bergdorf, 206 N.Y. 309, 99 N.E. 714; Pinellas Ice & Cold Storage Co. v. Commissioner, 5 Cir., 57 F.2d 188; Royal Palm Soap Co. v. Seaboard Air Line Ry. Co., 5 Cir., 296 F. 448; Lee v. Atlantic Coast Line, C.C., 150 F. 775. Undoubtedly such statutes vary in the different states particularly in respect to how far the constituent companies may be deemed to survive the creation of the new or modified corporate structure, *but we believe that the general purpose of them all has been to continue the interests of those owning enterprises,* which. have been merged or consolidated, in another corporate form. A sale of the assets of one corporation to another for cash without the retention of any interest by the seller in the purchaser is quite outside the objects of merger and consolidation statutes." (Italics ours.)

See also Pinellas Ice & Cold Storage Co. v. Commissioner of Internal Revenue, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428 and Mercantile Home Bank & Trust Co. v. United States, 8 Cir., 96 F.2d 655.

Under the provisions of LSA–Revised Statutes 12:19 dealing with the liability of incorporators, subscribers, shareholders, directors ond officers, it is provided in Section C as follows:

"Nothing in this Chapter shall be construed as in derogation of any rights which any person may by law have against an incorporator, subscriber, shareholder, director, officer, or the corporation, because of any fraud practiced upon him by any of such persons or the corporation, or in derogation of any right which the corporation may have because of any fraud practiced upon it by any of these persons."

The plaintiff was fully authorized to prosecute these proceedings under this provision of the Revised Statutes.

While the district court had no authority to accept the supplemental petition, because it was filed too late, this court has on many occasions in the interest of justice remanded cases ordering the acceptance of supplemental petitions. Reeves v. Globe Indemnity Co., 185 La. 42, 168 So. 488; Drewett v. Carnahan, 186 La. 243, 172 So. 6; Reagor v. First National Life Ins. Co., 212 La. 789, 33 So.2d 521; Lemoine v. Lacour, 213 La. 109, 34 So.2d 392. The supplemental petition will more fully clarify the issues sought to be raised and in the interest of justice should be admitted.

For the reasons assigned, the judgment is reversed and set aside, the case is remanded to the lower court for the admission of the supplemental petition and for trial on the merits. Costs of this appeal to be paid by the defendants-appellees. All other costs to await the final disposition of the cause.