299 So.2d 389 (1974)
TRAVIS-EDWARDS, INC., Plaintiff-Appellee,
v.
TEXAS-EDWARDS, INC., et al., Defendants-Appellants.
No. 12362.
Court of Appeal of Louisiana, Second Circuit.
July 1, 1974.
Rehearing Denied September 4, 1974.
Writ Refused October 25, 1974.
*390 Lunn, Irion, Switzer, Johnson & Salley by Harry A. Johnson, Jr., Shreveport, for defendants-appellants.
Nelson & Achee, Ltd. by Harry R. Nelson, Roland J. Achee, Shreveport, for plaintiff-appellee.
Before PRICE, HALL and WILLIAMS, JJ.
Rehearing en Banc. Denied September 4, 1974.
WILLIAMS, Judge.
Travis-Edwards, Inc. obtained a judgment in the district court against defendants, Texas-Edwards Inc. and Lomas & Nettleton Financial Corporation, in solido, for $191,250 plus interest and costs. Defendants perfected a suspensive appeal from this judgment.
The facts established that on January 3, 1955 a corporation named 522 Market Street, Inc. was formed under the laws of the state of Delaware with its domicile in Caddo Parish, Louisiana. On November 28, 1958 the corporation's articles were amended to change the name to Texas-Edwards, Inc. The principal asset of this corporation was the Petroleum Tower Building situated on the corner of Texas and Edwards Streets in downtown Shreveport, Louisiana. The lot or land on which the Petroleum Tower was constructed was owned by Julia Levy and others, and was under a long term lease assigned to Texas-Edwards, Inc.
The construction of the Petroleum Tower was financed by a loan obtained by Texas-Edwards from The Travelers Insurance Company for $2,300,000. This loan was made on August 31, 1959 secured by a first mortgage on a lease covering property on which the Petroleum Tower was built. On April 1, 1960 Texas-Edwards obtained a loan of $225,000 from Travis-Edwards, Inc., a Delaware corporation also domiciled in Caddo Parish. This loan was represented by a note of the same date payable to Travis-Edwards, Inc. and secured by a second mortgage on the lease agreement covering the property on which the Petroleum Tower was constructed. This note provided the principal and interest be payable as follows:
"Interest is payable on the first day of April in each year, commencing 1962; installments of principal in the amount of Six Thousand Seven Hundred Fifty and No/100 Dollars ($6,750.00) each are payable on the first day of April in each of the years 1965 to 1974, both inclusive; and installments of principal in the amount of Thirty-one Thousand Five Hundred and No/100 Dollars ($31,500.-00) each are payable on the first day of April in the year 1975 and in each year thereafter until this Note is fully paid."
This note also contained the following acceleration clause:
"If default be made in the payment of any installment of interest or principal under this Note, and if such default is not made good within thirty (30) days after due date thereof, the entire principal sum and accrued interest shall at once become due and payable without notice, at the option of the holder of this Note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default."
*391 On March 7, 1960 Wallace Properties, Inc. was incorporated under the laws of Delaware and domiciled in Texas. An agreement was entered into on April 2, 1960 between Texas-Edwards, Inc. and its stockholders and others referred to therein as "contributors" and Wallace Properties, Inc. The purpose of this agreement was in general for Wallace Properties, Inc. to acquire all of the stock from the stockholders of Texas-Edwards, Inc. in exchange for stock in Wallace Properties, Inc. This then made Wallace Properties, Inc. owner of all stock in Texas-Edwards, Inc. Such agreement and exchange was done with the full knowledge of the outstanding indebtedness owed by Texas-Edwards, Inc.
Subsequent to the above agreement and exchange between the stockholders of Texas-Edwards, Inc. and Wallace Properties, Inc., an instrument title Conveyance of Real Estate Lease and Improvements was executed by the two corporate entities. This instrument executed September 6, 1961 effective August 23, 1961 recites that Texas-Edwards, Inc. was represented by its president, E. E. Wallace, Jr. and Wallace Properties, Inc. was represented by its president, E. E. Wallace, Jr. The instrument purports to convey from Texas-Edwards, Inc. to Wallace Properties, Inc. the lease of realty on which the Petroleum Tower was constructed. In turn Wallace Properties, Inc. accepted the act of conveyance subject to the "special mortgage of date April 1, 1960 executed by Texas-Edwards, Inc. in favor of Travis-Edwards, Inc., to secure a promissory note of the same date in the principal sum of $225,000.. . . " This act of conveyance recites "The consideration herefor is the sum of Ten and 00/100 ($10.00) cash in hand paid and other good and valuable considerations.. . ."
Wallace Properties, Inc., represented by its president, E. E. Wallace, Jr., declaring itself to be the record owner and holder of all outstanding stock of Texas-Edwards, Inc., executed on September 1, 1961 a consent to dissolution of the Texas-Edwards, Inc. This Certificate of Dissolution of Texas-Edwards, Inc. was filed in the office of the Secretary of the state of Delaware September 5, 1961. It is interesting to note the actual signing of the act of conveyance by Texas-Edwards, Inc. to Wallace Properties, Inc. was done on September 6, 1961, one day after the actual recording of the dissolution of Texas-Edwards, Inc. as a corporate entity. We also take note of a conveyance by Wallace Properties, Inc. to the Futterman Corporation, dated September 8, 1961, of the Lease of Realty described in the special mortgage to Travis-Edwards, Inc. Since the Futterman Corproation is not a party to this suit this will have no bearing or consideration in the decision of this case.
On September 22, 1961 Wallace Properties, Inc. amended its Certificate of Incorporation by changing its name to Wallace Investments, Inc. Subsequently, Wallace Investments, Inc. filed a Certificate of Amendment on July 26, 1965 changing its corporate title to Lomas & Nettleton Financial Corporation.
There is no evidence of any notice, if any, given by Wallace Properties, Inc., parent corporation and sole owner of stock of Texas-Edwards, Inc., to the mortgage creditor, Travis-Edwards, Inc., of the dissolution of Texas-Edwards, Inc. Apparently, this was not considered important by the corporation because such payments due on the promissory note were paid until the default of the April 1, 1969 installment. The record shows a sheriff's sale under a writ of fieri facias issued in the cause entitled Travelers Insurance Company v. Texas-Edwards, Inc., et al., No. 198,431 on the docket of the First Judicial District Court, Caddo Parish, Louisiana. This foreclosure under the first mortgage covering the security given Travis-Edwards, Inc., left the promissory note without further security other than a promise of payment. On default of payment on the note this suit followed and defendants named are Texas-Edwards, Inc. and Lomas & Nettleton Financial Corporation.
In this appeal defendants set forth their specifications of error by the trial court as *392 follows: (1) in concluding that Lomas and Nettleton was but a continuation of Texas-Edwards, Inc. and responsible for the liabilities of Texas-Edwards, Inc.; (2) in concluding that there was a de facto merger of Texas-Edwards, Inc. and Lomas and Nettleton; (3) in holding that Lomas and Nettleton has any personal responsibility for the debts of Texas-Edwards, Inc., and (4) in holding that Texas-Edwards, Inc. was amenable to service, citation and judgment since it was shown to have been dissolved in the state of its incorporation on September 5, 1961.
We will first consider the fourth contention by defendant, Texas-Edwards, Inc. that it was not amenable to service, citation and judgment, since it is shown to have been dissolved in the state of its incorporation on September 5, 1961. Texas-Edwards, Inc., as a Delaware corporation, was a foreign corporation authorized to do business in Louisiana. As a condition precedent to its doing business in this state, LSA-R.S. 12:202, Sec. A, paragraph 3 of 1950 provided:
"A certified copy of a resolution of the board of directors of the foreign corporation. This resolution, which shall accompany the power of attorney required by paragraph 2 of this Subsection shall agree that any lawful process against the corporation which is served upon the agent shall be a valid service upon the corporation. This authority shall continue in force and be maintained as long as any liability growing out of or connected with the business done by the corporation in this state remains outstanding against the corporation." (Emphasis supplied)
Texas-Edwards, Inc.'s right to do business in Louisiana as of the date it created the indebtedness to Travis-Edwards, Inc., was controlled by the above statute. The indebtedness or liability grew out of business done by the corporation in this state and such liability is obviously still outstanding. This contention by Texas-Edwards, Inc. that it is not amenable to service is without merit.
The question raised by defendants as to whether a merger took place between the two corporate entities is here determined under laws or jurisprudence of this state as of the date such action was taken. The Supreme Court of Louisiana in Mc-Carthy v. Osborn, 223 La. 305, 65 So.2d 776 (1953) in a comprehensive treatment of this question, stated:
"Under the Business Corporation Act, now incorporated as LSA-Revised Statutes 12:1 et seq., a merger of corporations is authorized but the term `merger' is not defined. Therefore, it becomes necessary for us to ascertain what is the recognized meaning of the term `merger'.
"From a reading of the authorities and excerpts, hereafter recited and quoted, it is plain that the term `merger' has a well recognized meaning in the courts. A merger of two corporations is formed by the stockholders placing their assets and liabilities into a common pool and forming one single corporate body wherein the interest of stockholders of the two corporations are retained in the newly created corporation." [65 So.2d 776, 778]
The court quoted with approval from Cortland Specialty Company v. Commissioner of Internal Revenue, 60 F.2d 937 (1932):
"* * * A merger ordinarily is an absorption by one corporation of the properties and franchises of another whose stock it has acquired. The merged corporation ceases to exist, and the merging corporation alone survives. A consolidation involves a dissolution of the companies consolidating and a transfer of corporate assets and franchises to a new company. In each case interests of the stockholders and creditors of any company which disappears remain and are retained against the surviving or newly created company. . . ." (Emphasis supplied) [60 F.2d 937, 939]
*393 We find such is the case here under consideration. The procedure followed when Texas-Edwards, Inc. was absorbed by Wallace Properties, Inc. was in fact a merger. The assets of Texas-Edwards, Inc. as well as its liabilities became the responsibility of the surviving corporation, Wallace Properties, Inc., now Lomas & Nettleton Financial Corporation.
Defendant, Lomas and Nettleton Financial Corporation, argues here that in the conveyance by Texas-Edwards, Inc. to Wallace Properties, Inc., the acceptance by the vendee, Wallace Properties, Inc. was made "subject to" the outstanding mortgage indebtedness to Travis-Edwards, Inc., Therefore, this acceptance did not create any personal liability by Wallace Properties, Inc. for such indebtedness. This argument is without merit because of our conclusion a merger took place between the two corporate entities and Wallace Properties, Inc. became responsible for the then existing indebtedness of Texas-Edwards, Inc.
For the foregoing reasons the judgment of the trial court is affirmed.
Affirmed.