995 So.2d 53 (2008)
MARSH ADVANTAGE AMERICA, a Service of Seabury & Smith, Inc.
v.
ORLEANS PARISH SCHOOL BOARD.
No. 2008-CA-0004.
Court of Appeal of Louisiana, Fourth Circuit.
October 8, 2008.
*55 William F. Grace, Jr., Walter F. Becker, Jr., Douglas L. Grundmeyer, Chaffe McCall, L.L.P. New Orleans, LA, for Plaintiff/Appellee.
Philip A. Costa, Costa Law Firm (APLC), New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge JAMES F. McKAY, III, Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD).
EDWIN A. LOMBARD, Judge.
In this breach of contract claim, Defendant/Appellant, the New Orleans School Board ("the School Board"), appeals from the trial court's judgment in favor of Plaintiff/Appellee, Marsh U.S.A., Inc. ("Marsh"), in the amount of $70,000. Marsh appeals only the award portion of the trial court's judgment. For the following reasons, we affirm, as amended, the trial court's judgment.

Relevant Facts
In 1996, the School Board issued a document entitled Request for Qualification No. 6978 ("RFQ 6978") to prospective consulting agencies in an effort to hire an independent insurance consultant to develop the School Board's employee benefits program. In October of 1996, sales consultant Lisa Ippolito ("Mrs. Ippolito"), on behalf of her employer, Johnson & Higgins of Louisiana Inc. ("Johnson & Higgins"), responded to RFQ 6978 with a proposal outlining her companies offer to bid the school Board's work out to prospective insurance carriers, solicit proposals, obtain quotes, analyze responses, and make recommendations to the School Board. The School Board accepted Johnson & Higgins' proposal, creating an ongoing insurance consulting agreement between them. The terms of the agreement provided that the School Board would pay Johnson & Higgins for its consulting services and would later be reimbursed by the carrier eventually selected by the School Board.
Pursuant to their agreement, over the next few years, Mrs. Ippolito prepared several Requests for Proposals ("RFP") on behalf of the School Board, including one in 1996 for life, medical, health, and dental insurance, and two in 1997, for prescription drug benefits and a Senior 65 program for the School Board's retirees. The School Board paid its fees for this consulting work on these three RFPs without complaint. During this time, Johnson & Higgins had merged with Marsh McLennan, a company that thereafter merged into Marsh U.S.A., Inc.
In 2001, again pursuant to the ongoing agreement between the parties, Mrs. Ippolito prepared, at the request of the School Board, two more requests for proposals: RFP 7656, concerning the School Board's employee health benefits program for life, dental and vision insurance, as it had previously done in 1996, and RFP 7657, concerning the School Board's flexible benefits program and the voluntary life and dental insurance it offered to union employees. Per the terms of the RFPs, Marsh was to receive $70,000 as its consulting fee under RFP 7656 and a $5,000 consulting fee under RFP 7657.
Mrs. Ippolito and her staff compiled and prepared the information and statistics for RFPs 7656 and 7657 over a period of several months. After the RFPs were issued to various insurance carriers, Mrs. *56 Ippolito and her staff spent additional time reviewing, analyzing, and preparing a detailed report regarding the multiple proposals from insurers and submitted their recommendations in a written report to the School Board. The School Board never paid Marsh for the services related to RFP 7656 and 7657. As a result, Marsh Advantage America, an operating company of Marsh McLennan, filed suit against the School Board for breach of contract seeking $75,000 in damages for compensation for the development of the requests for proposals and analyzing the proposals submitted. Later, with the trial court's approval, Marsh moved to amend the petition and substitute Marsh U.S.A., Inc. as the named plaintiff.
At the onset of the trial on the merits, the School Board filed Exceptions of No Right and No Cause of Action, arguing that Marsh U.S.A., Inc. was not the proper party plaintiff and that it possessed no viable cause of action against the School Board. The District Court denied the exceptions and the case proceeded to a bench trial. At trial, Mrs. Ippolito testified as to her personal knowledge of the terms of the agreement between the parties and the scope of the work she and her staff performed under RFPs 7656 and 7657.
James Fahrenholtz, a School Board member, testified on behalf of the School Board. It was his testimony that since November of 2001, the School Board has required that all RFQs over a certain monetary amount be put out to public bid and be approved and signed by the School Board president or the superintendent. Marsh objected to this testimony on the basis that the School Board requested the services, and Mrs. Ippolito and her staff began the work, involved in the preparation of RFPs 7656 and 7657 in April of 2001, before this regulation took effect.
On September 24, 2007, the district court signed a judgment in favor is Marsh U.S.A., formerly Marsh Advantage America, a Service of Seabury & Smith, Inc., in the amount of $70,000 plus legal interest. In its reasons for judgment, the trial court noted that the services rendered by Marsh were professional services that were exempt from public bidding, and that Marsh, through the testimony of Mrs. Ippolito, proved that a contract existed and proved the terms of the contract. It is from this judgment that the parties appeal.

Specifications of Error
On appeal, the School Board alleges that the trial court committed reversible error in: (1) finding that Marsh proved it was the successor corporation to Johnson & Higgins, the company with whom the School Board contracted for the aforementioned consulting work; (2) finding that Marsh proved the terms of the contract and that a contract actually existed through witnesses who had personal knowledge; and (3) admitting into evidence unsigned and unauthenticated documents.
Marsh appeals the monetary award of $70,000, arguing that the trial court miscalculated the fees owed by the School Board, which, they contend actually totaled $75,000.

Law & Discussion
In its brief, the School Board attempts to make several arguments why it should not have to pay Marsh for the consulting fees it purportedly owes pursuant to RFPs 7656 and 7657. The School Board's first argument is that the trial court erred in finding that Marsh proved it was the successor corporation to Johnson & Higgins, the party with which it initially contracted for the insurance consulting services. The School Board argues that Marsh failed to produce documents proving that Marsh is the legal successor in interest of Johnson *57 & Higgins, and thus, failed to prove an essential element of its case and that it had a right of action to bring this lawsuit.
The evidence in the record indicates that Marsh is the proper party to bring this lawsuit. Minutes from a 1997 School Board meeting reflect the School Board's awareness of the merger between Johnson & Higgins and Marsh McLennan as well as the School Board's acknowledgement of its continuing consulting contract with Johnson & Higgins/Marsh McLennan. The same minutes also reflect the School Board's acknowledgement that a merger had thereafter occurred whereby Marsh McLennan was acquired by Marsh, USA. Moreover, a review of the Louisiana Secretary of State Corporations database confirms that Johnson & Higgins of Louisiana, Inc. merged into J & H Marsh & McLennan, which then merged into Marsh USA, Inc. As a matter of law, when two corporations merge or consolidate, the new successor corporation acquires all of the assets and rights of the former corporation. LSA-R.S. 12:115; McCarthy v. Osborn, 223 La. 305, 65 So.2d 776, 779 (1953). Therefore, the School Board's argument that Marsh has no right to bring the instant action is without merit.
The School Board's next argument is that the trial court committed reversible error in finding that Marsh proved the terms of the contract and that a contract actually existed. In support of this argument, the School Board notes that Marsh was unable to produce a signed written contract at trial and that the copies of the RFQ and RFPs that Marsh did offer up as evidence were blank and unsigned. The School Board also argues that the witnesses that testified on behalf of Marsh at trial did not have personal knowledge of the terms of the alleged agreements. Finally, the School Board argues that the RFPs at issue were not valid contracts because they were not signed by the School Board president in accordance with School Board procedures and Louisiana statutory law.
Despite the fact that Marsh was unable to produce the original signed RFPs at issue, since the School Board possessed the original copies, the trial court found that the School Board's argument that Marsh failed to prove that a contract existed was contradicted by Mrs. Ippolito's trial testimony, as well as the minutes of the School Board's October 27, 1997 meeting, in which the School Board approved an extension of Marsh's contract.
The existence or non-existence of a contract is a question of fact. Price v. Law Firm of Alex O. Lewis, III, 04-0806 (La.App. 4 Cir. 3/2/05), 898 So.2d 608, 610; see also Fox v. LAM, 25,616, p. 2 (La.App. 2 Cir. 2/23/94), 632 So.2d 877, 878. A reviewing court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, Dept. of Transp. and Development, 617 So.2d 880, 882 (La. 1993). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883.
At trial, Mrs. Ippolito testified that she personally drafted and submitted Johnson & Higgins' initial response to the School Board's RFQ 6978, as well as the subsequent RFPs, as requested by the School Board. She further testified that she attended several School Board meetings during which the RFPs were discussed, and that she personally corresponded with the School Board superintendent regarding the work to be performed. She and her staff personally performed the work and submitted their reports to the School Board. Clearly, Mrs. Ippolito's testimony as to the terms of the agreement and the *58 scope of the work she personally performed pursuant to the RFPs was based on her personal knowledge and was qualified to testify as to the terms of the agreements. Moreover, a review of the record reflects that the School Board did in fact, extend the consulting contract with Johnson & Higgins/Marsh McLennan through Mrs. Ippolito at an October 1997 School Board meeting. Therefore, we find no error in the trial court's finding that an insurance consulting contract existed between the School Board and Marsh.
In an effort to show that the RFPs in question were not valid agreements, the School Board cites Louisiana Revised Statute Sections 38:2213 and 17:83, which, it alleges, mandate that all public contracts must be in writing and signed by the president or vice president of the School Board. However, the School Board's reliance on the two cited statutes is misplaced. LSA-R.S. 38:2213, which is part of the Louisiana Public Bid Law, found at 38:2211, et seq., concerns the letting of public contracts for public works. In finding for Marsh, the trial court found that "services rendered by an insurance agent in effecting comprehensive insurance programs for insurance needs, identifying risks, recommending ways of reducing risks and performing costs analysis are `professional services' and exempt from public bidding" and thus, LSA-R.S. 38:2213 is not applicable to this case. We find no error in the trial court's finding in this respect.
Likewise, LSA-R.S. 17:83, too, has no bearing on the matter at hand. Section 17:83 provides, in relevant part, that all deeds and contracts for the schools shall be signed by the school board president. Marsh argues that this statute simply imposes ministerial duties on school board officials to sign contracts when necessary and does not mandate that all contracts with the School Board must be in writing and signed. We agree. RFQ 6978, the initial consulting agreement between the parties, which was drafted by the School Board, does not mention a requirement that subsequent agreements for services must be in writing or and signed by the School Board president. Further, the testimony of Mr. Farenholz that since November of 1991, all RFPs over a certain monetary amount must be approved by the superintendent is irrelevant, since Mrs. Ippolito testified that she began the work required by the subject RFPs in the Spring of 2001. Thus, we find no merit no merit in the School Board's argument that the RFPs at issue were not valid contracts.
Further, we find no merit in the School Board's argument that the trial court erred in allowing unsigned and unauthenticated documents to be admitted into evidence. A district court has great discretion concerning the admission of evidence at trial, and an appellate court will not reverse its decision to admit or exclude evidence absent an abuse of that discretion. Medine v. Roniger, 03-3436 (La.7/2/04), 879 So.2d 706, 711; James v. Jackson, 04-0912 (La.App. 4 Cir. 3/2/05), 898 So.2d 596, 599, writ denied, 05-0867 (La.5/1305), 902 So.2d 1005. If the original copies of RFQ 6978 and RFPs 7656 and 7657 still exist, they would be in the possession of the School Board. At trial, Mrs. Ippolito identified the copy of RFQ 6978 as the document that Johnson & Higgins received from the school board and which she used to prepare her initial proposal. She also identified the copies of RFP 7656 and 7657 submitted to the court by Marsh as those she personally drafted on behalf of Marsh and submitted to the School Board. Because Mrs. Ippolito testified as to her personal knowledge of these documents and identified the copies as those she personally prepared, we do not find that the trial court abused its *59 discretion in allowing these documents into evidence.
The School Board contracted with Marsh's corporate predecessor for insurance consulting services. Marsh performed the services requested and the School Board accepted the work and used it to select its employee benefit programs. Marsh is entitled to recover the total sum of the fees owed in developing RFPs 7656 and 7657. The School Board cannot now disregard its obligation by claiming that no contract existed. The testimony of Mrs. Ippolito as well as the documentary evidence offered by Marsh proved that a contract existed between the parties, as well as the terms of the agreement. Therefore, we find that the trial court did not err in finding for Marsh, and find no merit in the School Board's three specifications of error.
We now turn to Marsh's sole specification of error on appeal  that the trial court inadvertently erred in computing the total amount of damages as $70,000 instead of $75,000. In our review of this case, it is apparent that the trial court did miscalculate the total amount of damages owed pursuant to the two RFPs. While trial court found that the School Board was liable to Marsh for the fees associated with RFPs 7656 and 7657, it erroneously stated in its reasons for judgment that "Marsh is seeking $70,000 in damages as compensation for the development of those Requests for Proposals and analyzing the seven proposals submitted," when Marsh was actually seeking $75,000. Per the terms of the RFPs, Marsh was to receive $70,000 as its consulting fee under RFP 7656 and a $5,000 consulting fee under RFP 7657. Therefore, the total sum of compensatory damages awarded should actually be $75,000.00.
This $5,000 difference is obviously a clerical error or error in calculation by the trial court. As a reviewing court, we are vested with the authority to correct obvious errors of calculation in judgments of the trial court, which could have been corrected if brought to the attention of the court below. LSA-C.C.P. art. 1951; see also Union Sulphur Co. v. Campbell, 207 La. 514, 21 So.2d 626, 632 (1945). Accordingly, we will amend the judgment to make the correction.

Decree
For the foregoing reasons, we amend the judgment of the trial court to reflect an award of $75,000, and affirm the judgment as amended.
AFFIRMED AS AMENDED.